701 P.2d 847

Jean HEBERT; the surviving spouse of
Gerald Ernest Hebert, deceased,
Plaintiff/Appellant,

v.

CLUB 37 BAR, Defendant/Appellee.

No. 2 CA–CIV 5073.

Court of Appeals of Arizona,
Division 2.

Oct. 30, 1984.

Review Denied March 26, 1985.

Ronald D. Mercaldo, Tucson, for plaintiff/appellant.

Slutes, Browning, Sakrison & Grant, P.C. by Philip H. Grant, Tucson, for defendant/appellee.

## OPINION

HOWARD, Judge.

Is a tavern keeper liable for damages if he serves intoxicating liquor to a person who is obviously intoxicated and that person goes outside the bar and murders someone? We hold that he is not and affirm.

■ This being an appeal from the granting of a directed verdict in favor of appellees, we view the evidence in the light most favorable to appellant. *Rocky Mountain Fire and Casualty Company v. Biddulph Oldsmobile*, 131 Ariz. 289, 640 P.2d 851 (1982).

In 1979 Ernest Hicks, an alcoholic, left his wife and children in Pennsylvania and came to Tucson. He moved into an apartment near the Club 37 Bar. He spent each day, from the time he arose, drinking. He did most of his drinking at the Club 37, going in and out until he drank his usual two quarts of vodka per day and was intoxicated. He had alcoholic blackouts and people at the bar would tell him about some of the things he could not remember. However, there was no evidence that he became violent during those blackouts.

Sometimes Hicks carried a pistol in his boot when he went into the Club 37, but no one inside knew he had it, although an employee knew he had a pistol in his car.

Hicks described himself on the witness stand as very easy going when sober but if he is "pushed into a corner" when he is drinking, he becomes belligerent and violent. He once was thrown out of the Club 37 for being very loud and argumentative, but on that occasion he was not intoxicated but only suffering from a hangover. There is no evidence that any of the owners or employees of Club 37 ever knew Hicks to be belligerent and violent and, in fact, Hicks said that he was fairly well behaved when drinking.

On the day in question Hicks visited the Club 37 and drank until he "got a little buzz." He consumed approximately 10 to 15 drinks on his first visit to the bar in the morning. The bartender on that occasion also sold Hicks a bottle of vodka for the road. Hicks left the bar to do some work for his friend Kathy Barrow, an employee of the Club 37. Hicks was in and out of the bar all day. During the course of the day Hicks was served drinks by two different bartenders and sometime during the day suffered an alcoholic blackout which prevented his recalling any of the further events of the day. When the evening bartender came on duty at approximately 7 p.m. Hicks was intoxicated. The bartender then refused to serve Hicks any more drinks but Hicks remained at the bar with half a drink in front of him from approximately 7 p.m. until 10:30 p.m. At one time during the evening Hicks was arguing with a Bryant McKay and the bartender had McKay move away from Hicks. The murder victim, Jerry Hebert, was also in the bar but Hicks did not speak to him during that evening inside the bar. At approximately 10:30 that night, Hicks shot Jerry Hebert in the head with a shotgun in the parking lot of the Club 37. Hicks recalled nothing of the shooting and, in fact, recalled nothing of what occurred after he left the bar early in the morning.

Hicks was arrested later in the mobile home of his friend, Kathy Barrow. A blood test revealed .26 per cent of alcohol, which meant that at the time that he killed Hebert, Hicks would have been exhibiting extreme signs of intoxication.

The police report of the incident indicates that at the time Hicks killed Jerry Hebert he was operating under the mistaken impression that Jerry Hebert was in fact another individual named Jack McCormick who may have had an affair with Hicks' wife some years earlier. There was also testimony that Hicks probably would not have committed the crime had he been sober. Hicks was convicted of first-degree murder for killing Hebert.

Appellant sued Hicks, the owners of the Club 37, and the bartender who was on duty on the night in question. The trial court directed a verdict in favor of all defendants except Hicks. The case against Hicks was subsequently continued and a written judgment in favor of all defendants except Hicks was entered, with the appropriate determination under Rule 54(b) that there was no just reason for delaying entry of judgment.

■ In *Pierce v. Lopez*, 16 Ariz.App. 54, 490 P.2d 1182 (1971), we considered the liability of a bar owner for an assault by

one patron upon another, holding that while a bar owner is not an insurer of the safety of his patrons he does owe them a duty to exercise reasonable care and vigilance to protect them from reasonably foreseeable injury, mistreatment or annoyance at the hands of other patrons. We also stated that under Arizona law, as it then existed, civil liability could not be based solely on the sale of liquor to an intoxicated person. Appellant contends that the recent cases of *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983) and *Brannigan v. Raybuck*, 136 Ariz. 513, 667 P.2d 213 (1983), have changed the law so as to make the tavern keeper liable for this homicide. Appellant weakly argues that the evidence showed that appellee had notice of Hicks' dangerous propensities and therefore would have been liable under the laws that existed under *Pierce v. Lopez*, supra. We reject this argument because the evidence clearly shows that appellee had no reason to believe that Hicks was dangerous or violent. Appellant's main argument is based solely on the notion that because liquor was served to an obviously intoxicated patron, under *Ontiveros v. Borak*, supra, and *Brannigan v. Raybuck*, supra, the tavern keeper and the bartender are liable. We do not agree.

In *Ontiveros v. Borak*, supra, the court overruled previous Arizona decisions and held that the tavern owner was under a duty, imposed both by common law principles and statute, to exercise care in serving intoxicants to a patron who later injured a third party. The case held that tavern owners and other licensed sellers are under a duty of care and may be held liable when they sell liquor to an intoxicated patron or customer under circumstances where the licensee or his employees know or should know that such conduct creates an unreasonable risk of harm to others who may be injured either on or off the premises. If the duty of care is breached, the seller will be liable for the damage caused by his negligence. In *Brannigan v. Raybuck*, supra, the court held that where a violation of the statutes pertaining to furnishing liquor to those who are under age or already

intoxicated is shown, negligence exists as a matter of law, but under proper facts the jury may be allowed to find that the violation was excusable. *Ontiveros* makes clear that the plaintiff in these cases must still show causation and that the tavern keeper or bartender cannot be held liable if the injury is caused by a superseding, intervening cause. As stated in *Ontiveros:*

> "The test, then, for whether the actions of a patron, such as Flores, constitute a superseding cause which relieves the tavern owner from liability is whether Flores' conduct was unforeseeable to one in Borak's position and whether the court can say with the benefit of hindsight that the occurrence of the harm through the conduct of the intervening actor was both unforeseeable and extraordinary." 136 Ariz. at 506, 667 P.2d 200.

*Ontiveros* was an automobile accident case and it, like its precursors from other jurisdictions, was premised on the observation that most people in modern society drive automobiles and that it is foreseeable to a tavern owner that his intoxicated patron will leave the bar, get into his automobile, and, as a result of his intoxication have a traffic accident.

■ Although the case of *Brannigan v. Raybuck*, supra, did not discuss causation, it is clear that in addition to the breach of a statute intended as a safety regulation, one must also show that the breach of that statute was a proximate cause of the accident. See *Vesely v. Sager*, 5 Cal.3d 153, 486 P.2d 151, 95 Cal.Rptr. 623 (1971) (sale of intoxicating liquor to an already intoxicated person in violation of § 25602, Business and Professional Code, is negligence per se).

■ Armed with the hindsight mentioned in *Ontiveros* and assuming for the purposes of this opinion that appellees were negligent, we believe, as did the trial court, the murder here was both unforeseeable and extraordinary. Neither the facts nor common sense nor common experience lead to the conclusion that Hicks' conduct

was foreseeable. His act in murdering Hebert was a superseding, intervening cause, as a matter of law, which relieved appellees of any liability.

Affirmed.

BIRDSALL, C.J., and HATHAWAY, J., concur.