789 P.2d 1040

Evorah Faye ROBERTSON,
Plaintiff/Appellant,

v.

SIXPENCE INNS OF AMERICA, INC.,
a foreign corporation,
Defendant/Appellee.

No. CV-89-0170-PR.

Supreme Court of Arizona,
En Banc.

March 8, 1990.

Reconsideration Denied May 1, 1990.

Rabinovitz & Associates, P.C. by Bernard I. Rabinovitz and Gary M. Israel, Tucson, for plaintiff/appellant.

Lewis and Roca by Merton E. Marks, Susan M. Freeman, R. Todd Lundmark and James K. Kloss, Phoenix, for defendant/appellee.

GORDON, Chief Justice.

Police officer John A. Robertson was shot and killed by an armed robber while working as an off-duty security guard at the Sixpence Inns in Phoenix, Arizona. His

wife, Evorah Faye Robertson (plaintiff), sought damages from Sixpence Inns (defendant) for its alleged negligence. The trial court granted partial summary judgment in favor of defendant on all but one claim, and granted a directed verdict on the remaining claim of negligent failure to warn. The court of appeals affirmed the trial court in a memorandum decision.

Plaintiff petitioned this court for review of the court of appeals decision affirming both the summary judgment and directed verdict. We granted review on only the directed verdict. *See* Rule 23(f), Ariz.R. Civ.App.P., 17B A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3).

Because plaintiff presented sufficient evidence of negligent failure to warn to take the issue to the jury, we vacate the court of appeals decision and reverse and remand to the trial court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

The granting of a directed verdict indicates that the court believed reasonable minds could not differ on the outcome of the case on the evidence presented. *See Chambers v. Western Arizona CATV*, 130 Ariz. 605, 607, 638 P.2d 219, 221 (1981). Because we disagree with the courts below and believe reasonable minds could reach different inferences and conclusions on the evidence presented in this case, we set out that evidence in some detail.

John A. Robertson was a full-time police officer who also worked part-time as an off-duty security guard for Sixpence Inns. The security guard duty was assigned through his precinct and Robertson was equipped with his full Phoenix police uniform, weapon, and hand-held two-way radio when working at the motel.

On the night of November 17, 1984, while working at Sixpence Inns, Officer Robertson stopped Randy J. Harris on suspicion of trespass. After asking for identification, the officer used his radio to request a warrant check on Harris. Before Robertson received a reply, however, someone from the motel yelled to him that the man he stopped had just robbed a motel guest. Robertson told Harris not to leave and turned toward the voice. When Robertson turned his back, Harris shot him in the neck, fatally wounding him.

Officer Robertson's widow and children filed a workers' compensation claim for death benefits against the City of Phoenix and Sixpence Inns. In the Industrial Commission hearing, all parties stipulated that Robertson was killed in the line of duty as a Phoenix police officer. That status arose just before the shooting, when the person called to the officer about the robbery. The administrative law judge also determined that when Robertson was not acting as a police officer, he was an independent contractor of Sixpence Inns. The City of Phoenix, therefore, was found liable for the entire workers' compensation claim. The employment status findings were affirmed in *City of Phoenix v. Industrial Comm'n*, 154 Ariz. 324, 742 P.2d 825 (App.1987).

Plaintiff then sued defendant Sixpence Inns, alleging negligence in failing to furnish a safe place to work and in failing to warn Robertson of the armed robber on the premises. The court granted partial summary judgment to defendant, but preserved the issue of failure to warn for trial.[1]

At trial, motel manager Clifford Kaiser testified to the events leading up to the shooting. At some undisclosed time in the

---

1. In denying Sixpence Inns' motion for summary judgment on the issue of failure to warn, the judge explained:

 The Court thinks that a reasonable jury could conclude that the defendant motel did not tell the police department, before the decedent officer was shot, that an armed robbery had occurred; that there was sufficient time before the officer was shot for the motel staff to tell the police department of the robbery and for the police department to so advise the officer; that, if the officer had been so advised, he would have taken sufficient precautionary measures to prevent himself from being shot; and, that, under all the circumstances, the motel staff should have told the police department of the robbery in sufficient time for the department to relay the robbery report to the officer.

 A different judge, however, heard essentially the same evidence at trial and granted the directed verdict.

evening of November 17, 1984, a man, later identified as Randy J. Harris, entered Room 220 of the Sixpence Inns and robbed two men at gunpoint. Harris stripped the men, bound them, and threatened one of them by placing a gun in the victim's mouth. He also tore the telephone off the wall before leaving the room. Some time later, the victims freed themselves and reported the robbery to the desk clerk in the motel office. The clerk then reported the robbery to Kaiser. Because neither the motel clerk nor the victims testified at trial, no evidence was presented establishing the length of time between the robbery and the report to Kaiser.

Kaiser testified that upon hearing of the robbery, he ran to the victims' room, where he learned that the robber was armed and had threatened one victim with a gun. After noticing that the phone was ripped from the wall, Kaiser went to the room next door and used the phone to call the desk clerk, before returning briefly to the victims' room. Although the desk clerk assured Kaiser that she had already called the police, she apparently had not done so. According to the testimony of a communications supervisor for the Phoenix police department, the police first heard about the robbery when the motel clerk phoned in information about Robertson's shooting.

Conflicting testimony was presented about Kaiser's actions after he left the victims' room the second time. Kaiser testified at trial that after viewing the room where the robbery occurred, he ran outside to the west and north sides of the motel looking for Robertson. He stated that when he could not find Robertson, he returned to his apartment and watched television for a moment until he heard a shot. In a pretrial deposition used at trial, however, Kaiser gave no indication that he conducted a search for Officer Robertson before returning to his apartment.

Plaintiff's security expert, Kevin Parsons, Ph.D., testified that, in his opinion, the motel owed a duty to warn Robertson immediately of the armed robbery and the failure to warn fell below the required standard of conduct. He stated that Robertson would have been informed of the robbery almost immediately if the motel had called the police promptly. Moreover, had Robertson been forewarned of an armed robber on the premises, he would have reacted differently when he encountered Harris. The testimony of two of Robertson's police coworkers supported the expert's opinions. They stated that if Robertson had been forewarned he would not have approached Harris as he did and that he likely would have taken additional steps to protect himself.

At the close of plaintiff's evidence, the trial judge granted defendant's motion for directed verdict, finding that plaintiff failed to present sufficient evidence of defendant's negligence to present the issue to the jury.

The court of appeals affirmed both the summary judgment and the directed verdict. With respect to the directed verdict, the court noted that the only duty defendant owed to Robertson was the duty to warn of known perils on the premises. The court found that plaintiff presented no evidence that defendant knew or had reason to know that the robber remained on the premises. It found important the lack of evidence with respect to the time delay between the robbery and the notification of Kaiser. Relying on an estimated time delay, the court found that "common sense alone dictates that the likelihood of an armed robber remaining at the site diminishes significantly with every tick of the clock." *Robertson v. Sixpence Inns of America, Inc.*, No. 2 CA–CV 88–0364, slip op. at 4 (February 16, 1989). Thus, the court held, plaintiff failed to establish that defendant owed any duty to warn Officer Robertson. In addition, the court stated that, on the whole, plaintiff failed to establish a *prima facie* case of negligence.

## DISCUSSION

### A. *Standard for Directed Verdict*

The issue before us is whether the trial court correctly granted defendant's motion for directed verdict. *See* Rule 50(a), Ariz. R.Civ.P., 16 A.R.S. When considering a motion for directed verdict, a trial court

must decide, as a matter of law, whether the moving party's evidence is sufficient. 2 C. Smith, Arizona Practice: Civil Trial Practice § 510 (1986). A motion for directed verdict admits the truth of the evidence offered by the opposing party, *Chambers*, 130 Ariz. at 607, 638 P.2d at 221, and cannot be granted if reasonable minds can differ as to the inferences or conclusions drawn from the evidence. *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985); *Chambers*, 130 Ariz. at 607, 638 P.2d at 221. Moreover, it is the jury's function to select which of the conflicting inferences or conclusions is the most reasonable. *Wagenseller*, 147 Ariz. at 383, 710 P.2d at 1038; *see also* P. Keeton, Prosser & Keeton on the Law of Torts § 37 (5th ed.1984).

## B. *Prima Facie Case of Negligence*

The trial judge listed five reasons for granting defendant's motion for directed verdict: (1) no evidence of negligence by the motel clerk or Kaiser; (2) no evidence that defendant knew the armed robber was still on the premises; (3) no evidence that the failure to warn Robertson was the cause of his death; (4) the conduct of Harris was an intervening superseding cause; and (5) any increased alertness that plaintiff postulated would have resulted from a warning did in fact exist because Robertson was informed of the robbery and requested a warrant check. The first four reasons and a reading of the record indicate that the trial court believed plaintiff failed to prove the elements of duty, breach of duty, and causation as required to establish a *prima facie* case of negligence. The rationale behind the fifth reason is unclear, although the statement appears to imply that the trial court viewed Officer Robertson's own actions as somehow relieving defendant of the duty to warn.

The court of appeals, quoting *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985), correctly noted

that plaintiff must show defendant owed "a duty or obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm" to withstand a motion for directed verdict in a negligence action. *See also Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983). However, the court then upheld the directed verdict, finding that defendant owed no duty unless sufficient evidence was presented that defendant knew the robber was still on the premises, and that plaintiff failed to establish a *prima facie* case of negligence.

We believe that both lower courts misinterpreted the law of negligence as it applies to the facts of this case. We therefore, once again, review Arizona law dealing with the elements of a *prima facie* case of negligence as it applies to the facts of this case.[2]

### 1. Duty

#### a. *Overview*

■ The existence of a duty is a question of law to be determined by the court. *Markowitz*, 146 Ariz. at 354, 706 P.2d at 366. "Duty" arises from the recognition that certain relations between individuals impose on one a legal obligation for the benefit of another. *Ontiveros*, 136 Ariz. at 508, 667 P.2d at 208; *see also Coburn v. City of Tucson*, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984); P. Keeton, *supra*, § 53, at 356.

■ Both the trial court and the court of appeals apparently believed plaintiff failed to establish that defendant owed Robertson any duty because plaintiff presented no evidence that defendant knew the robber was still on the motel premises. We disagree with that analysis. We believe both courts erroneously equated the issue of the existence of *any* duty with the specific details of the required standard of conduct.

---

**2.** Although proof of injury or damages is also an element of a *prima facie* case of negligence, that element is not contested here and therefore we do not discuss it. We also note that only the trial court specifically addressed the issue of

causation in this case. Although the court of appeals stated generally that plaintiff failed to prove a *prima facie* case of negligence, it did not make any specific findings regarding causation.

*See Markowitz,* 146 Ariz. at 355, 706 P.2d at 367.

In an earlier and separate proceeding before the Industrial Commission, the administrative law judge determined that Robertson acted as an independent contractor up to the time he was alerted of the robbery. *See City of Phoenix v. Industrial Comm'n,* 154 Ariz. 324, 327, 742 P.2d 825, 828 (Ct.App.1987) (affirming ICA Claim No. 552–82–1971). The parties have not contested that finding throughout the proceedings or in this appeal. Indeed, arguments by both parties throughout the proceedings indicate they apparently agreed with the finding.

Whether defendant knew the robber was still on the premises is certainly one factor to consider in determining whether defendant breached the required standard of care. However, we cannot state as a rule of law that a contractee is relieved of all duty to independent contractors simply because the contractee does not know whether a hazard still exists on the property. Because Robertson was still acting as an independent contractor when defendant learned of the robbery, the first inquiry on the motion for directed verdict was whether defendant owed any duty to warn Robertson *as an independent contractor.* If a duty is found to exist, only then does the issue arise as to whether defendant breached the required standard of conduct.

### b. *Duty owed to independent contractor*

■ Generally, an independent contractor and the contractor's employees are included in the category of business invitees for the purpose of determining the duty owed by the contractee. P. Keeton, *supra,* § 61; Annotation, *Duty of Owner of Premises to Furnish Independent Contractor or His Employee a Safe Place of Work, Where Contract is for Repairs,* 31 A.L.R.2d 1375, 1379 (1953). The general rule of liability for an owner or occupier to business invitees requires one "to discover and correct or warn of hazards which the possessor should reasonably foresee as endangering an invitee." *Markowitz,* 146 Ariz.

at 355, 706 P.2d at 367 (citing Restatement (Second) of Torts § 343 (1965)).

■ This duty to protect invitees includes the obligation to warn invitees of any danger of which the occupier knows or should know and of which the invitee is unaware and unlikely to discover. P. Keeton, *supra,* § 61; *see also Johnson v. A. Schilling & Co.,* 170 Cal.App.2d 318, 339 P.2d 139, 141 (1959). The warning must allow the invitee to decide intelligently whether to accept an invitation to enter the property and, if the invitee chooses to do so, protect himself against any danger. Restatement (Second) of Torts § 343, comment b. Therefore, the owner/occupier or contractee owes a duty "to an independent contractor and to his employees to turn over a reasonably safe place to work, or to give warning of any dangers." *Welker v. Kennecott Copper Co.,* 1 Ariz.App. 395, 405, 403 P.2d 330, 340 (1965); *see also German v. Mountain States Tel. & Tel. Co.,* 11 Ariz.App. 91, 97, 462 P.2d 108, 114 (1969); Annotation, *supra,* 31 A.L.R.2d at 1379.

■ In the context of this case, we may say as a matter of law that defendant, as a contractee, owed a duty of reasonable care to its independent contractor, Officer Robertson, to warn of certain hazards, much like the duty an owner/occupier owes to business invitees. That duty remained constant, although the conduct required to fulfill that duty was determined by the circumstances. Because a duty existed in this case, we must address whether plaintiff presented sufficient evidence such that reasonable minds could differ on whether defendant's actions were negligent.

### 2. Standard of Conduct

■ The general test for whether a defendant's conduct breached the standard of care is whether a foreseeable risk of injury existed as a result of defendant's conduct. *Markowitz,* 146 Ariz. at 357, 706 P.2d at 369. Where reasonable people could differ as to whether an injury was foreseeable, the question of negligence is one of fact left to the jury. *Id.* at 357–58, 706 P.2d at 369–70; *Beach v. City of Phoe-*

*nix,* 136 Ariz. 601, 604, 667 P.2d 1316, 1319 (1983).

■ Various conditions may alter the standard of conduct required to satisfy the duty arising in the contractee-independent contractor relationship. For example, courts generally will find that a contractee is not liable to an independent contractor where injury occurs because of a condition the independent contractor was hired to correct. *See, e.g., Vest v. National Lead Co.,* 469 F.2d 256, 257 (8th Cir.1972). In addition, courts usually will find that a contractee "is not liable for death or injury of an independent contractor or one of his employees resulting from dangers which the contractor, as an expert, has known, or as to which he and his employees 'assumed the risk.'" Annotation, *supra,* 31 A.L. R.2d at 1382. In such situations, the contractee still owes a general duty of reasonable care to the independent contractor. *See, e.g., Pucalik v. Holiday Inns, Inc.,* 777 F.2d 359 (7th Cir.1985) (where defendant hotel retained partial responsibility for security, standard of conduct necessary to satisfy duty owed required defendant to take affirmative action to protect security guard). However, if the contractor was hired to correct a hazardous condition or assumed the risk of the condition, circumstances may indicate that the contractee's duty was satisfied even though the contractee did not warn the independent contractor of that condition on the premises. *See, e.g., Turner v. Northwest Gen. Hosp.,* 97 Mich.App. 1, 293 N.W.2d 713 (1980) (where security company assumed responsibility for entire hospital security, defendant hospital satisfied its duty despite not taking certain precautions to protect security guard).

■ In some situations, however, a contractee must still protect an independent contractor from known dangers or provide adequate warning of their existence. Such an obligation exists, for example, where the circumstances indicate that the contractee should anticipate harm to the independent contractor despite the contractor's knowledge of the danger. Restatement (Second) of Torts §§ 343, comment d, 343A,

comment f; *see also Johnson v. Tucson Estates, Inc.,* 140 Ariz. 531, 534, 683 P.2d 330, 333 (App.1984); *Silvas v. Speros Const. Co.,* 122 Ariz. 333, 335, 594 P.2d 1029, 1031 (App.1979). Although characteristics of the danger may also alert the independent contractor of a need to exercise reasonable care on his own behalf, they do not relieve the contractee of its general duty. Instead, such characteristics may raise issues of contributory negligence or assumption of the risk, which in Arizona are always questions for the jury and not proper subjects for a directed verdict. Ariz. Const. art. 18, § 5; *Markowitz,* 146 Ariz. at 359, 706 P.2d at 371; *Beach,* 136 Ariz. at 604, 667 P.2d at 1319.

■ We believe reasonable people could disagree about whether defendant took adequate precautions to protect Officer Robertson. In fact, the evidence could support many conclusions about what conduct would have been reasonable under the circumstances and we do not believe any of those conclusions apply as a matter of law. Viewing the evidence in the light most favorable to plaintiff, defendant could have anticipated the harm to Officer Robertson. Plaintiff asserted that the motel was located in a high crime area, indicating that defendant should have been alerted to potential criminal conduct. In addition, Kaiser learned that the robber was armed and knew that Robertson was patrolling the motel premises. Plaintiff at least arguably established that Kaiser should have anticipated Robertson's encounter with Harris on the motel property. Although Robertson may have had a "heightened sense of awareness," that would not relieve defendant of its obligation as a matter of law. Whether the surrounding circumstances were sufficient to render defendant's conduct a breach of its duty to Robertson should have been presented to the jury to decide.

### 3. Proximate Cause

The trial court stated that plaintiff presented no evidence that defendant's conduct caused Robertson's death, and dismissed the testimony of plaintiff's expert

and Robertson's coworkers as speculation. Apparently, the trial court believed that even if plaintiff presented sufficient evidence of duty and breach of the standard of conduct, a directed verdict was required on the issue of proximate cause. Although the court correctly stated the general principles, we believe it improperly applied the law to the facts of the case.

 In a cause of action for negligence, plaintiff must show some reasonable connection between defendant's act or omission and plaintiff's damages or injuries. *Purcell v. Zimbelman*, 18 Ariz.App. 75, 82, 500 P.2d 335, 342 (1972). Thus, plaintiff bears the burden of proof on the issue of proximate cause, which Arizona courts unvaryingly define as follows:

> The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred.

*See, e.g., McDowell v. Davis*, 104 Ariz. 69, 71, 448 P.2d 869, 871 (1968); *Central Alarm of Tucson v. Ganem*, 116 Ariz. 74, 76, 567 P.2d 1203, 1205 (App.1977). The defendant's act or omission need not be a "large" or "abundant" cause of the injury; even if defendant's conduct contributes "only a little" to plaintiff's damages, liability exists if the damages would not have occurred but for that conduct. *Ontiveros*, 136 Ariz. at 505, 667 P.2d at 205. Plaintiff need only present probable facts from which the causal relationship reasonably may be inferred. *Purcell*, 18 Ariz.App. at 82, 500 P.2d at 342.

 Ordinarily, the question of proximate cause is a question of fact for the jury. Only when plaintiff's evidence does not establish a causal connection, leaving causation to the jury's speculation, or where reasonable persons could not differ on the inference derived from the evidence, may the court properly enter a directed verdict. *Gosewisch v. American Honda Motor Co.*, 153 Ariz. 400, 404, 737 P.2d 376, 380 (1987); *Markowitz*, 146 Ariz. at 358, 706 P.2d at 370; *Tennen v. Lane*, 149 Ariz. 94, 96–97, 716 P.2d 1031, 1033–34 (App.

1985). In this case, plaintiff presented sufficient evidence from which reasonable persons could infer that defendant's conduct contributed at least "a little" to Robertson's shooting. The failure to warn Robertson of the armed robbery arguably left him at a disadvantage when he confronted Harris. Reasonable persons could conclude that if Robertson had been forewarned he would have taken added precautions.

 Defendant also asserted in the motion for directed verdict that Harris's act of shooting Robertson was an intervening superseding cause, claiming the act was unusual, unforeseeable, and violent in nature. Apparently, both courts below agreed with defendant's assertion. We disagree, however, because Harris's act reasonably could be found to have been within the scope of the risk created.

 An intervening cause is an independent cause that intervenes between defendant's original negligent act or omission and the final result and is necessary in bringing about that result. *Rossell v. Volkswagen of America*, 147 Ariz. 160, 168, 709 P.2d 517, 525 (1985); *Ontiveros*, 136 Ariz. at 505–06, 667 P.2d at 205–06; *Central Alarm*, 116 Ariz. at 76, 567 P.2d at 1205. Not all intervening acts are superseding causes, however. A superseding cause, sufficient to become the proximate cause of the final result and relieve defendant of liability for his original negligence, arises only when an intervening force was unforeseeable and may be described, with the benefit of hindsight, as extraordinary. *Rossell*, 147 Ariz. at 169, 709 P.2d at 526; *Ontiveros*, 136 Ariz. at 505–06, 667 P.2d at 205–06.

 In appropriate cases, the scope of the risk created by defendant's original negligence may include the criminal conduct of a third person. *See, e.g., Circle K Corp. v. Rosenthal*, 118 Ariz. 63, 68, 574 P.2d 856, 861 (App.1978) (adopting rule that employer may be liable for failing to protect employees from reasonably foreseeable criminal conduct of third parties); *Central Alarm*, 116 Ariz. 74, 567 P.2d 1203

(burglar alarm company leaving key for deactivation of system in an accessible place was not relieved of liability by another's intervening criminal acts). An appropriate case typically involves a special relationship between defendant and another, such as occupier-invitee, where defendant's original conduct created or increased the risk of harm through the misconduct of another, even when that misconduct is intentional or criminal in nature. Restatement (Second) of Torts §§ 302B, 449.

Defendant relied on *Hebert v. Club 37 Bar*, 145 Ariz. 351, 701 P.2d 847 (App. 1984), to support the motion for directed verdict on the issue of superseding cause. In *Hebert*, the court of appeals held that a tavern owner could not be held liable for selling alcohol to an alcoholic who shot and killed another patron outside the bar. *Id.* at 353–54, 701 P.2d at 849–50. As defendant correctly pointed out, the court in *Hebert* noted that the tavern owner knew the man was intoxicated and carried a gun in his car. However, defendant failed to point out that the court also found that the plaintiff presented no evidence the tavern owner knew of the man's violent propensity or had any indication of the events prior to their occurrence. In fact, the man had exhibited little or no violent tendencies before the events took place. Thus, the court held, the man's intervening actions could not be foreseen by the tavern owner and became the superseding cause of the patron's death. *Hebert*, 145 Ariz. at 353–54, 701 P.2d at 849–50.

The facts of the case before us are distinguishable from the facts in *Hebert*. In this case, reasonable persons could find that Robertson's shooting was foreseeable. Defendant knew an armed robbery had taken place, indicating other violence might occur. Thus, reasonable persons could find that defendant should have foreseen that failing to warn Robertson of the robbery would expose him to possible criminal conduct. Arguably, the shooting was within the scope of the risk created by defendant's conduct, and the issue should have been left to the jury to decide.

## CONCLUSIONS AND DISPOSITION

After reviewing the record in this case, we find that plaintiff presented evidence that, if taken as true for purposes of the motion, would have caused reasonable persons to differ, precluding a directed verdict.

As determined in the Industrial Commission hearing, and not contested throughout these proceedings, Robertson was still acting as defendant's independent contractor when defendant learned of the robbery. Thus, defendant owed the duty to warn Officer Robertson of any dangers of which defendant was aware and of which Robertson was unaware. The robbery constituted such a danger and the duty to warn Robertson about its occurrence arose when defendant first discovered the robbery. That duty was not eliminated by the mere passage of time.

Once it was established that defendant owed a duty to Officer Robertson, plaintiff needed to present evidence sufficient to permit reasonable jurors to find in plaintiff's favor on the elements of breach and causation. We believe plaintiff satisfied that burden. Plaintiff's expert testified that the failure to call the police promptly breached the standard of care and that the negligence continued until after Robertson was shot. Two of Robertson's coworkers testified that Robertson would have acted differently had he been forewarned of the robbery. This testimony, combined with other evidence, could give rise to varying inferences and conclusions. The evidence indicates that the motel failed to call the police about the robbery until after Robertson had been shot, and supports the inference that had the motel reported the robbery promptly, Robertson could have been forewarned by the police dispatcher. If Robertson had been forewarned, he arguably would have acted more cautiously when he encountered a suspicious person.

Because reasonable minds could reach various conclusions on the evidence offered in this case, the jury should have been allowed to choose which conclusion to draw. Whether defendant was negligent in failing to warn Robertson was an issue

of fact for the jury to decide, as were the questions whether defendant's failure to warn was a cause of Robertson's shooting or whether the passage of time made Harris's act a superseding cause.

We hold that the trial court erroneously granted the directed verdict in this case. The court of appeals memorandum decision is vacated and the case reversed and remanded for further proceedings consistent with this opinion.

FELDMAN, V.C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.