IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROBERTO TORRES, et al., *Plaintiffs/Appellees*,

*v.*

JAI DINING SERVICES (PHOENIX) INC., *Defendant/Appellant*.

No. 1 CA-CV 19-0544
FILED 7-16-2020

Appeal from the Superior Court in Maricopa County
No. CV2016-016688
The Honorable Sherry K. Stephens, Judge

**REVERSED IN PART AND REMANDED WITH DIRECTIONS**

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Counsel for Plaintiffs/Appellees*

Osborn Maledon, P.A., Phoenix
By Eric M. Fraser, Joshua David Rothenberg Bendor
*Co-Counsel for Defendant/Appellant*

Quintairos, Prieto, Wood & Boyer, P.A., Phoenix
By Dominique T. Barrett
*Co-Counsel for Defendant/Appellant*

**OPINION**

Presiding Judge Lawrence F. Winthrop delivered the opinion of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

**W I N T H R O P**, Judge:

¶1        This case presents questions about the scope of a liquor licensee's liability for injuries its patron caused after a night of drinking and irresponsible decisions.  The licensee, JAI Dining Services (Phoenix) Inc. ("JAI"), appeals a judgment in favor of Roberto Torres, Orlenda Guillen, Hernan Gastelum Rosas, and Maria Suarez (collectively, "Plaintiffs"), awarding Plaintiffs $2,000,000 plus costs and interest against Cesar Aguilera Villanueva and JAI, forty percent of which was apportioned to JAI.

¶2        JAI appealed the judgment and denial of its renewed motion for judgment as a matter of law, *see* Ariz. R. Civ. P. ("Rule") 50, arguing it should not be held liable for three independent reasons:  (1) Villanueva's being awakened and his decision to drive again after previously arriving safely home, getting into bed, and going to sleep was an intervening, superseding cause that cut off JAI's liability; (2) the claims on which the jury found JAI liable have been preempted by statute; and (3) JAI did not breach any duty the law imposed on it and could have done nothing to prevent Villanueva from leaving his house and operating a motor vehicle several hours after he left the licensee's club.  Finding the first argument dispositive, we agree with JAI the superior court should have directed judgment in JAI's favor based on a lack of proximate causation. Accordingly, we reverse that portion of the judgment against JAI and remand for the superior court to enter judgment in favor of JAI and in favor of Plaintiffs only as to Villanueva.

## FACTS[1] AND PROCEDURAL HISTORY

¶3        At 5:14 a.m. on November 8, 2015, while traveling at eighty-six miles per hour, Villanueva crashed his Toyota Tundra pickup truck into

---

[1]      We view the evidence and reasonable inferences therefrom in the light most favorable to Plaintiffs.  *Sobieski v. Am. Standard Ins. Co. of Wis.*, 240 Ariz. 531, 534, ¶ 8 (App. 2016).

a car stopped at a red light, killing both the car's occupants. Villanueva was arrested at the scene, convicted of two counts of manslaughter, and sentenced to serve fourteen years in prison.

¶4        The day before the collision, Villanueva worked a twelve-hour shift at his warehouse job, finishing his work at approximately 6:30 p.m. He went directly from work to a family wedding reception, where he had tacos and "some beer." At approximately 9:00 p.m., he went home to shower and change clothes before going out with a group of friends and relatives to Jaguar's, a strip club owned by JAI. On the way to Jaguar's, Villanueva stopped at a convenience store and purchased a twenty-four-ounce container of beer, which he quickly consumed while driving to Jaguar's.

¶5        Villanueva did not appear visibly intoxicated when his group arrived at the club at approximately 11:20 p.m. As the group walked into the club and headed for a table, Villanueva purchased and began drinking a twelve-ounce beer from a tub of beers on ice. The three men in the group (including Villanueva) then ordered a "mega bucket" of beer (which contained fifteen beers), and the four women ordered several mixed drinks and a smaller bucket of beer (which contained approximately six beers).

¶6        At approximately 1:53 a.m., Villanueva escorted his girlfriend, Leticia Morales, and her friend, Wendy, to Villanueva's truck in the parking lot because Leticia was drunk. Wendy and Leticia stayed in the truck, and Villanueva, who at trial asserted he was by that time feeling "drunk" himself, went back into the club fifteen minutes later, at 2:08 a.m. While Villanueva was outside, the other men ordered a second mega bucket of beer. Villanueva drank one beer—his last for the evening—from the second mega bucket and then left to use the restroom. In total, Villanueva drank six or seven beers at the club, but he ostensibly did not display obvious signs of intoxication, a characterization disputed by Plaintiffs.

¶7        When Villanueva returned from the restroom, it was near closing time, and he saw a Jaguar's bouncer trying to take a beer from his sister, who was refusing to relinquish the drink. After momentarily grabbing the bouncer's arm, Villanueva briefly argued with the bouncer, then agreed to leave, and several Jaguar's employees escorted Villanueva's

group outside.[2]  The group left the club at approximately 2:20 a.m.  By that time, the group had been at the club for approximately three hours.

¶8          Villanueva drove his truck to his brother's house, which was approximately fifteen minutes away.  At his brother's house, Villanueva drank an energy drink and hung out for a while to, in his words, "chill out for a little bit and sober up."  At approximately 4:00 a.m., a friend drove Villanueva and his sister home in Villanueva's truck.  Leticia and Wendy went along.

¶9          The group arrived safely at Villanueva's residence—a home Villanueva shared with his sister and parents—and Villanueva went to bed and fell asleep.  Sometime thereafter, Villanueva was awakened by Leticia, and at her prodding agreed to get out of bed and help drive Wendy home. Villanueva agreed on the condition that Wendy drive the truck to her home because he did not feel as though he could safely drive.  Wendy drove Villanueva's truck to her house (which was approximately forty-five minutes away), while Villanueva and Leticia slept.

¶10         On his way back home for the second time that morning, with Leticia still sleeping in the truck, Villanueva caused the fatal vehicle collision, killing the two victims.  Approximately two hours after the crash, Villanueva's blood alcohol content ("BAC") was approximately .078 or .079. Assuming Villanueva drank no further alcohol after leaving Jaguar's, as he claimed, Villanueva's BAC when he left Jaguar's was between .128 and .166, and his BAC at the time of the crash was approximately .11.  Other than the time he spent sleeping in bed after arriving home and while riding to Wendy's home, Villanueva had been awake for approximately twenty-four hours before the collision.

¶11         One year later, the victims' relatives (Plaintiffs) sued Villanueva and JAI.  Plaintiffs asserted a negligence claim against Villanueva.  Against JAI, Plaintiffs asserted common law negligence, dram shop liability, and statutory negligence per se.

¶12         Before trial, JAI moved for summary judgment regarding proximate causation as to JAI, arguing Villanueva's deliberate decision to

---

[2]     The record is contradictory as to whether a Jaguar's employee offered to secure a taxi or other alternate transportation for the group. Nonetheless, in considering JAI's motion for summary judgment, the superior court stated, "there is no factual dispute . . . that [] JAI's employee assessed [] Villan[ue]va and determined he was 'ok to drive.'"

drive after arriving home safely and falling asleep for a period of time was unforeseeable and constituted a superseding, intervening event of independent origin negating any negligence on JAI's part. After responsive briefing and oral argument, the superior court took the matter under advisement and denied the motion.

¶13 Trial was held in February and March 2019. At the close of evidence, JAI moved for judgment as a matter of law under Rule 50(a), Ariz. R. Civ. P., on the claims of negligence and dram shop liability, arguing both the proximate cause and duty elements of negligence could not be met. JAI argued a superseding intervening cause had occurred because undisputed testimony showed Villanueva "made it to a place of repose, made it home, in his bed at home, and it was his decision then, once he made it home safe, to leave and get in the [truck]." JAI argued Plaintiffs had presented absolutely no facts making it foreseeable to JAI that once Villanueva was home asleep in his bed, he would leave. Consequently, both any ongoing duty and proximate causation necessarily ended. JAI further argued, "[o]therwise, there would be no point in having somebody take a cab home. It would require the club to basically lock him in his house and somehow hold him hostage in his own house until he sobers up. And that's not realistic." Plaintiffs argued that JAI's duty could not legally end until Villanueva was no longer subject to the influence of the alcohol, and that everything he did until then was influenced by, and should be considered proximately caused by, the alcohol. The superior court denied the Rule 50 motion.

¶14 The jury found in Plaintiffs' favor on negligence against Villanueva and on common law negligence and dram shop liability against JAI,[3] but found in JAI's favor on the statutory negligence per se claim. The jury awarded Plaintiffs $2,000,000 in compensatory damages, with fault apportioned sixty percent to Villanueva and forty percent to JAI. The jury rejected Plaintiffs' request for punitive damages.

¶15 After entry of a signed judgment, JAI renewed its motion for judgment as a matter of law under Rule 50(b), Ariz. R. Civ. P., again based on duty and proximate cause. After further briefing, the superior court denied the motion.

---

[3] Although the verdict forms identified three counts (negligence, dram shop liability, and negligence per se), the dram shop liability verdict form was effectively based on an additional instruction regarding JAI's liability for common law negligence rather than a separate claim.

**¶16**        JAI timely appealed.   We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## ANALYSIS

**¶17**        We review *de novo* the superior court's rulings on questions of law, including motions for summary judgment and judgment as a matter of law.  *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003); *Coll. Book Ctrs., Inc. v. Carefree Foothills Homeowners' Ass'n*, 225 Ariz. 533, 536, ¶ 9 (App. 2010).  Summary judgment is appropriate when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).  Similarly, judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Ariz. R. Civ. P. 50(a)(1).

**¶18**        To establish a negligence claim, a plaintiff must prove four elements: (1) a legal duty or obligation requiring the defendant to conform to a certain standard of care; (2) the defendant's failure to conform to the required standard; (3) a causal connection between the defendant's conduct and the plaintiff's resulting injury; and (4) actual loss or damages.  *Ontiveros v. Borak*, 136 Ariz. 500, 504 (1983) (citing William L. Prosser, *Handbook on the Law of Torts* § 30, at 143 (4th ed. 1971); *Wisener v. State*, 123 Ariz. 148, 149 (1979)).

**¶19**        In Arizona, liquor licensees such as JAI/Jaguar's have a duty "to exercise affirmative, reasonable care in serving intoxicants to patrons who might later injure themselves or an innocent third party, whether on or off the premises."  *Patterson v. Thunder Pass, Inc.*, 214 Ariz. 435, 438, ¶ 13 (App. 2007) (citing *Ontiveros*, 136 Ariz. at 508-11; *Brannigan v. Raybuck*, 136 Ariz. 513, 515-17 (1983)).  Whether a duty exists is a question of law.  *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007) (citing *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356 (1985), *superseded by statute on other grounds as recognized in Maher v. United States*, 56 F.3d 1039, 1042 n.4 (9th Cir. 1995)).

**¶20**        To recover for negligence, a plaintiff also must show the liquor licensee's breach of duty or negligent conduct was the proximate cause of his or her injury.  *Hebert v. Club 37 Bar*, 145 Ariz. 351, 353 (App.

1984).[4]  Generally, whether proximate cause (and an intervening and superseding cause) exists is a question of fact for the jury; however, summary judgment or a directed verdict (now a judgment as a matter of law) should be granted when the plaintiff's evidence fails to establish a non-speculative causal connection or when reasonable persons could not differ. *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546-47 (1990); *accord Dupray v. JAI Dining Servs. (Phoenix), Inc.*, 245 Ariz. 578, 584, ¶ 18 (App. 2018); *McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 256, ¶ 38 (App. 2013).  Thus, courts are required to act as gatekeepers in determining the outer parameters of proximate causation.  *See Gipson*, 214 Ariz. at 143, ¶ 9 n.1 (recognizing that a court should grant summary judgment "if no reasonable juror could conclude that the standard of care was breached or that the damages were proximately caused by the defendant's conduct" (citing *Markowitz*, 146 Ariz. at 357-58; *Coburn v. City of Tucson*, 143 Ariz. 50, 53 (1984))).  *See also Grafitti-Valenzuela v. City of Phoenix*, 216 Ariz. 454, 458, ¶ 13 (App. 2007) ("[I]n approaching the question of negligence or unreasonable risk, 'the courts set outer limits.  A jury will not be permitted to require a party to take a precaution that is clearly unreasonable.'" (quoting *Rogers v. Retrum*, 170 Ariz. 399, 402-03 n.4 (App. 1991) (quoting 3 F. Harper, F. James, & O. Gray, *The Law of Torts* § 15.3, at 355-57 (2d ed. 1986)))); *Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 266 (App. 1989) ("Although proximate cause is usually a question of fact for the jury, 'the determination of facts upon which there could be no reasonable difference of opinion is in the hands of the court.'" (quoting W. Prosser & W. Keeton, *Law of Torts* § 45, at 319-20 (5th ed. 1984))).

**¶21**        "The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Robertson*, 163 Ariz. at 546 (citing cases).  "An intervening cause is an independent cause that intervenes between [the] defendant's original negligent act or omission and the final result and is necessary in bringing about that result." *Id.* (citing *Rossell v. Volkswagen of Am.*, 147 Ariz. 160, 168

---

4        Similarly, to recover under Arizona's "dramshop statute," a plaintiff must show a licensee sold liquor to an obviously intoxicated person and that person's consumption of the liquor was a proximate cause of the plaintiff's injury.  A.R.S. § 4-311(A)(1)-(3).  An "obviously intoxicated" person is one who is "inebriated to such an extent that [the] person's physical faculties are substantially impaired and the impairment is shown by significantly uncoordinated physical action or significant physical dysfunction that would have been obvious to a reasonable person."  A.R.S. § 4-311(D); *accord* A.R.S. § 4-244(14).

(1985); *Ontiveros*, 136 Ariz. at 505-06; *Cent. Alarm of Tucson v. Ganem*, 116 Ariz. 74, 76 (App. 1977)). An intervening cause becomes a superseding cause relieving a defendant of liability when it "was unforeseeable by a reasonable person in the position of the original actor *and* when, looking backward, after the event, the intervening act appears extraordinary." *Ontiveros*, 136 Ariz. at 506 (citing *Herzberg v. White*, 49 Ariz. 313, 321-22 (1937); *Serrano v. Kenneth A. Ethridge Contracting Co.*, 2 Ariz. App. 473, 475-76 (1966); *City of Phoenix v. Schroeder*, 1 Ariz. App. 510, 516-17 (1965); Restatement (Second) of Torts §§ 435(2) cmts. c-d, 442 (1965)). "Thus, if 'an injury is produced by an intervening and superseding cause, even though the original negligence may have been a substantial factor in bringing about the injury, the original actor is not legally responsible therefor' because the necessary proximate causation is lacking." *Patterson*, 214 Ariz. at 439, ¶ 14 (quoting *Herzberg*, 49 Ariz. at 321); *accord Hebert*, 145 Ariz. at 353.

**¶22** In this case, an intervening and superseding cause relieving JAI of liability plainly existed based on the evidence presented and the reasoning of *Patterson*, as supplemented by our subsequent memorandum decision in *Anderson v. Matador Mexican Food Restaurant*, 1 CA-CV 09-0254, 2010 WL 3366656 (Ariz. App. Aug. 26, 2010) (mem. decision) (review denied).

**¶23** In *Patterson*, a tavern employee confiscated an intoxicated patron's car keys and called a taxicab to transport her home, but the taxicab never arrived. 214 Ariz. at 436, ¶ 3. Another tavern employee then used a different vehicle to drive the patron to her residence, returned her keys, and left. *Id.* Within an hour, however, and unbeknownst to the tavern employees, the patron secretly returned to the tavern parking lot, retrieved her vehicle, and caused a head-on collision. *Id.* The injured plaintiff sued the tavern under the theories of negligence, negligence per se, and respondeat superior. *Id.* at ¶ 4. The superior court granted summary judgment in favor of the tavern, *id.* at 436-37, ¶ 5, and we affirmed on two grounds, *id.* at 439-40, ¶¶ 16, 19.

**¶24** First, we held that by separating the patron from her vehicle and arranging for, as well as subsequently providing, her safe transportation to her residence, the tavern had, as a matter of law, fulfilled its legal duty of care to the patron and the public. *Id.* at 439, ¶ 16. Second, we held that even if the tavern had not fulfilled its legal duty, an intervening and superseding cause relieved the tavern of liability. *Id.* at 439-40, ¶¶ 17-19. We explained in part as follows:

> Certainly, it is foreseeable to a tavern owner that patrons of the tavern may become involved in a motor vehicle accident after being served liquor past the point of intoxication.
>
> However, that statement does not end our analysis because the question remains whether the intervening acts of separating [the patron] from her vehicle and driving her home broke the chain of legal causation such as to relieve [the tavern] of liability in this case. We conclude that they did. Although, as [the plaintiff] correctly notes, "[i]t is well known that highly intoxicated people make poor decisions," finding proximate causation based on such reasoning is simply too attenuated and might ultimately subject tavern owners to unlimited liability, a result that would no more serve public policy than finding nonliability in all circumstances. Instead, we hold that [the patron's] decision to return that night to retrieve her vehicle while she was still intoxicated was unforeseeable and extraordinary and thus constituted a superseding, intervening event of independent origin that negated any negligence on the part of the tavern or its employees.

*Id.* at 440, ¶¶ 18-19 (internal citation omitted).

**¶25**      As in this case, the evidence in *Anderson* showed a bar patron drank to excess and eventually departed a nightclub at approximately 2:00 a.m. 1 CA-CV 09-0254, 2010 WL 3366656, at *1, ¶¶ 3-5. A friend drove the patron home in the patron's car,[5] left the car keys on a table in her apartment, then departed at approximately 3:00 a.m. *Anderson*, 1 CA-CV 09-0254, 2010 WL 3366656, at *1, ¶¶ 5-6. Less than an hour later and with a BAC of .19, the patron left her home in her car, only to cause a collision that seriously injured two persons. *Id.* at ¶ 7. In the lawsuit that ensued, *see id.* at *2, ¶ 8, the superior court granted summary judgment in favor of the

---

[5]      The bar patron in *Anderson* was obviously intoxicated. She was observed staggering and leaning on a friend, had to stop during the trip home to urinate on the street, and required assistance getting out of the car and into her apartment. 1 CA-CV 09-0254, 2010 WL 3366656, at *1, ¶¶ 3-6. Nonetheless, no employee at either of the liquor establishments that served her that night offered to ensure transportation or otherwise assist her. *Id.* at ¶¶ 3, 5.

nightclub and another liquor establishment that had served the patron, and we affirmed, explaining in part as follows:

> [The two liquor establishments] contend that pursuant to *Patterson*, [the patron's] decision to leave her apartment after having been transported there by [her friend] was an intervening and superseding cause of plaintiffs' injuries. Plaintiffs contend that *Patterson* is distinguishable because unlike the tavern in *Patterson*, neither [liquor establishment] took any action to ensure that a sober driver would transport [the patron] from their premises, place her in a safe location, and take reasonable steps to ensure that she would not have access to an automobile while she was still intoxicated.
>
> Plaintiffs' argument addresses breach of duty, rather than causation. To be sure, [the two establishments] may well have breached their duties, and for purposes of our decision we assume that they did. But causation requires a different inquiry. Had the accident occurred as [the patron] was driving herself home from a bar, the result here would be different. *But the chain of events established by the undisputed facts compels us to recognize that the risk caused by an intoxicated driver, who has safely reached her home and has no known compelling reason to leave, cannot reasonably be said to fall within the risk created by a licensee's act of serving a patron too much alcohol. The latter risk lies chiefly in the fact that a person who becomes intoxicated at a commercial establishment may be unable to return to her home or other place of repose safely. But when the patron has safely been transported home, the risk of her deciding to leave home and take to the roads is no different than if she had become intoxicated at home with alcohol purchased at a store in package form.*
>
> As *Patterson* expressly acknowledged, where there is an intervening and superseding cause, a tavern cannot be held liable regardless of breach. *We agree with [the two establishments] that as in* <u>Patterson</u>, *[the patron's] independent decision to leave her apartment and drive was an intervening and superseding cause that broke the chain of proximate causation.* Accordingly, summary judgment in favor of [the two establishments] was appropriate.

*Anderson*, 1 CA-CV 09-0254, 2010 WL 3366656, at *3-4, ¶¶ 16-18 (emphasis added) (footnotes omitted).

¶26 JAI contends that, pursuant to *Patterson* and *Anderson*, Villanueva's decision to leave his residence and drive his vehicle after he had safely arrived home, gone to bed, and fallen asleep was an intervening and superseding cause of the two victims' deaths.

¶27 Citing *Dupray*, Plaintiffs counter that "whether a home is a 'place of repose' that might act as an intervening and superseding cause was something that presented 'factual questions for the jury, not the trial court, to determine.'" *See* 245 Ariz. at 584, ¶ 21. Plaintiffs maintain a factual dispute existed and was resolved by an appropriately instructed jury as to whether the chain of legal causation was broken.

¶28 In *Dupray*, a drunk bar patron who mostly lived in his car but often stayed at his girlfriend's house, went from the bar to a friend's house, and then drove to his girlfriend's house. 245 Ariz. at 581, ¶¶ 3-5. As he arrived, his girlfriend argued with him, told him he appeared intoxicated and should not be driving, and tried to take away his car key. *Id.* at ¶ 5. The patron became angry, aggressively drove away, and collided with another vehicle. *Id.* at ¶¶ 5-6.

¶29 On appeal, citing *Patterson*, the defendant liquor licensee (also JAI) argued it should have been granted judgment as a matter of law because "[the bar patron's] decisions to drive once he was safely away from the club constituted intervening and superseding causes that broke the chain of causation between JAI's negligence and the [plaintiffs'] injuries." *Id.* at 584, ¶ 21. Although we acknowledged there was "some force" to that argument, we concluded that "whether the homes of his friend or his girlfriend were places of repose, which might make unforeseeable his decision to leave them and continue driving, were factual questions for the jury, not the trial court, to determine." *Id.*[6]

---

[6] In *Dupray*, we denied JAI's request to reverse the verdict against it, concluding the jury had been presented with sufficient evidence to support the verdict and JAI was not entitled to judgment as a matter of law on the issue of causation. 245 Ariz. at 581, 584-85, ¶¶ 2, 21. Nevertheless, we vacated the verdict because the jury was not instructed on intervening and superseding cause, which "was critical to the jury's determination of liability." *Id.* at 581, 585-86, ¶¶ 2, 22-27. We remanded for the jury to be properly instructed as to intervening and superseding cause and to consider whether, on the facts provided, the driver had reached a place of repose that would cut off liability. *See id.* at 584-86, ¶¶ 21, 23, 27.

¶30         We continue to stand by that distinction and conclusion. Here, however, Villanueva unquestionably reached a place of repose—his own home, where he got into bed and went to sleep—and no one can reasonably contend otherwise.  As the superior court acknowledged in considering JAI's motion for summary judgment, "[u]nlike the facts in *Dupray . . .* , there is no factual dispute that [] Villanueva arrived home safely."

¶31         Plaintiffs further argue JAI overserved Villanueva, and it was generally foreseeable that if Villanueva drove his truck while under the influence of alcohol, he or members of the public could be injured or killed. Even assuming this is all true, it does not end our inquiry into proximate causation and whether an intervening and superseding cause existed.

¶32         Next, Plaintiffs argue, "A commercial liquor purveyor's common-law negligence and common-law dram-shop liability does not end when an overserved, impaired patron drives away from the liquor-service premises."  They maintain JAI had a continuing duty to take reasonable action to prevent Villanueva from driving to protect both Villanueva and the public, and unlike employees of the defendant tavern in *Patterson*, Jaguar's employees did nothing to break the chain of legal causation.

¶33         As with the plaintiffs' argument in *Anderson*, Plaintiffs' argument here focuses on breach of duty, rather than causation.  1 CA-CV 09-0254, 2010 WL 3366656, at *3, ¶ 17.  Certainly, Jaguar's employees may have breached their duties, and given the record before us and the jury's verdicts, it appears they did.  But, as this court noted in *Anderson*, "causation requires a different inquiry." *Id.* Had the accident occurred as Villanueva was driving himself home from Jaguar's, our conclusion would almost certainly be different.  Here, however, the chain of events established by the material facts in the record leads us to conclude the risk caused by an intoxicated driver (Villanueva), who has safely reached his residence, gone to bed, and fallen asleep, with no known compelling reason to leave,[7] cannot reasonably be said to fall within the risk created by

---

[7]    Although we agree it was generally foreseeable Villanueva could cause an accident after leaving Jaguar's and while driving home, no evidence exists in the record that Jaguar's employees knew or should have known Villanueva intended to drive shortly after arriving at his home and going to bed. *See Patterson*, 214 Ariz. at 439, ¶ 16.

Jaguar's act of serving him too much alcohol.[8] The latter risk lies chiefly in the fact that a person who becomes intoxicated at a bar or other commercial establishment serving alcohol may be unable to return to his or her home or other place of repose safely. Once Villanueva was safely transported home and went to sleep in his own bed, the risk of him getting up, leaving home, and deciding to drive was no different than if he had become intoxicated at home with alcohol purchased at a grocery store. *See Anderson*, 1 CA-CV 09-0254, 2010 WL 3366656, at *3, ¶ 17.

**¶34** As both *Patterson* and *Anderson* expressly acknowledged, when there is an intervening and superseding cause, a liquor licensee cannot be held liable regardless of breach. *See id.* at *4, ¶ 18. We agree with JAI that Villanueva's independent decision to leave his residence and drive was an intervening and superseding cause that broke the chain of proximate causation. Accordingly, the superior court should have directed a verdict in JAI's favor.[9]

---

[8] To the extent Plaintiffs contend an intoxicated patron's negligent acts are always foreseeable (and a liquor licensee's liability is always a question of fact) until intoxication ends, we reject that contention, as it is inconsistent with *Patterson* and would impose essentially unlimited liability upon the licensee.

[9] Because our opinion renders moot JAI's two other arguments, we do not address them.

## CONCLUSION

¶**35** The superior court's portion of the judgment against JAI is reversed, and the matter is remanded for the superior court to enter judgment in JAI's favor and in Plaintiff's favor only as to Villanueva. We deny Plaintiffs' request for costs and award JAI its taxable costs on appeal upon compliance with Rule 21, ARCAP.[10]



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[10] Our opinion does not affect the superior court's separate awards of attorneys' fees and costs to Plaintiffs and against JAI as a sanction for discovery violations. These were included in a separate signed order, and not in the judgment.