NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

COLLEEN GRUVER AND GARY GRUVER,
Wife and husband,
*Plaintiffs/Appellants*,

v.

WILD WESTERN HORSEBACK ADVENTURES LLC,
*Defendant/Appellee*.

No. 1 CA-CV 20-0566
FILED 8-17-2021

Appeal from the Superior Court in Yavapai County
No. V1300CV201980007
The Honorable Christopher L. Kottke, Judge

**REVERSED AND REMANDED**

COUNSEL

Ahwatukee Legal Office, PC, Phoenix
By David L. Abney
*Co-Counsel for Plaintiffs/Appellants*

David Shapiro Law, PLLC, Scottsdale
David C. Shapiro, Heather E. Bushor
*Co-Counsel for Plaintiffs/Appellants*

Grasso Law Firm, PC, Chandler
By Robert Grasso Jr., Jenna Victoria Mandraccia, N. Patrick Hall
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Michael J. Brown joined.

---

**W E I N Z W E I G**, Judge:

¶1   Colleen and Gary Gruver appeal the superior court's entry of summary judgment in favor of Wild Western Horseback Adventures, L.L.C. ("Western Horseback") on their claims for negligence and gross negligence. We reverse and remand.

### FACTS AND PROCEDURAL BACKGROUND

¶2   In the spring of 2018, Colleen and Gary arrived at Wild Western Horseback Ranch in Camp Verde for a guided 90-minute horseback ride. Western Horseback owned and operated the dude ranch. Before the ride, Colleen and Gary signed a one-page form titled "Visitor's Acknowledgement of Risk," which mistakenly identified the business owner as "Red Rock Horseback Adventures, Inc." Western Horseback did not explain the Acknowledgement's terms or confirm that Colleen and Gary read or understood them. As relevant here, the Acknowledgement provided:

> I assume full responsibility for personal injury to myself and/or to members of my family, or for loss or damage to my personal property and expenses thereof as a result of my negligence or the negligence of my family participating in said activity except to the extent such damage or injury may be due to the negligence of Red Rock Horseback Adv[.]

¶3   The Acknowledgement also described "the risks and dangers inherent in guided horseback tours," including that "[a] horse may, without warning or any apparent cause: buck, stumble, fall, rear, make unpredictable movements, spook, jump obstacles, step on a person's feet, push or shove a person, that saddles or bridles may loosen or break, any/all of which may cause the rider to fall or be jolted, resulting in serious injury or death."

¶4   In all, the riding party had nine guests and a wrangler named Flint, who had over 30 years of experience with horses and wild animals

but lacked formal training as a wrangler. Gary heard that a second wrangler should have been present, but he called in sick. The guests received basic safety instructions on how to make directional use of the reins and how to turn or stop a horse, but they received no instruction on the proper distance to maintain between horses. After mounting her horse, Colleen complained it would not stay in line. Flint said not to "worry about that [because] [t]hey'll fall in line when we start going."

¶5　　　　The horses and guests then ambled onto the trail in single file behind Flint. During the ride, the horses drifted apart, creating gaps between them. About an hour in, Gary lost a stirrup, and a horse bit his leg. Flint paused the trail ride to respond. As the horses slowed to a halt, the horse in front of Colleen kicked her shin and broke her tibia.

¶6　　　　The Gruvers sued Western Horseback for damages arising from Colleen's injury, asserting claims of negligence, gross negligence, loss of consortium and punitive damages. Western Horseback moved for summary judgment on all claims, arguing the Gruvers released their negligence claim under A.R.S. § 12-553, and the record lacked enough evidence to create a triable question of fact on causation for negligence or gross negligence. For their part, the Gruvers argued the release was unenforceable and the record had enough evidence to create a triable issue on causation.

¶7　　　　The superior court granted summary judgment to Western Horseback on all claims, explaining that Gruvers released their negligence claim under A.R.S. § 12-553 by signing the Acknowledgement. The court also found the record devoid of evidence to prove "gross negligence or willful misconduct." The Gruvers timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶8　　　　We review de novo the grant of summary judgment and issues of contract interpretation. *See Lindsay v. Cave Creek Outfitters, L.L.C.*, 207 Ariz. 487, 490, ¶ 11 (App. 2003); *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). Summary judgment is proper if there are no genuine issues of material fact. *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). We view all facts and reasonable inferences in the light most favorable to the non-movant. *Lindsay*, 207 Ariz. at 490, ¶ 11.

## I.    Negligence Claim Not Released

**¶9**        The superior court dismissed the negligence claim under A.R.S. § 12-553, concluding the statute "clearly applies."  This was error. Section 12-553(A) lists four requirements for an equine owner to be released from the ordinary negligence claims of persons who the owner allows "to take control of an equine."  The requirements are:

(1)     The person has taken control of the equine from the owner or agent when the injury or death occurs;

(2)     The person has signed a release before taking control of the equine;

(3)     The owner or agent has properly installed suitable tack or equipment or the person has personally tacked the equine with tack the person owned, leased or borrowed; and

(4)     The owner or agent assigns the person to a suitable equine based on a reasonable interpretation of the person's representation of his skills, health and experience with and knowledge of equines.

**¶10**        The second requirement is dispositive here because Colleen never signed a "release" as defined by the statute. A.R.S. § 12-553(E)(2) (defining "release" as "a document that a person signs before taking control of an equine from the owner or owner's agent [which] acknowledges that the person is aware of the inherent risks associated with equine activities, is willing and able to accept full responsibility for his own safety and welfare and releases the equine owner or agent from liability unless the equine owner or agent is grossly negligent or commits wilful, wanton or intentional acts or omissions.").  Instead, the plain terms of the Acknowledgement released Western Horseback only from personal injury, loss or damage resulting from Colleen's own negligence, and preserved Colleen's right to sue for "damage or injury [that] may be due to the negligence of [Western Horseback]."

**¶11**        Even so, Western Horseback contends the Gruvers waived this argument by not presenting it to the superior court.  But we review the grant of summary judgment de novo and cannot ignore the plain language of the contract on which the ruling was based. *Cal. Cas. Ins. Co. v. Am. Fam. Mut. Ins. Co.*, 208 Ariz. 416, 418, ¶ 5 (App. 2004).  Western Horseback also contends that Colleen assumed the risks associated with horseback riding under the Acknowledgement.  But an assumption of risk defense presents

a question of fact for the jury under the Arizona Constitution. Ariz. Const. art. 18, § 5 ("The defense of . . . assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury.").

¶12 We reverse the superior court's contract interpretation. *See Lindsay*, 207 Ariz. at 492, ¶ 18 (approving release that "clearly establishes [the rider] was promising not to sue [the equine owner]").[1]

## II. Causation and Gross Negligence

¶13 The superior court also found that the Gruvers did not present enough evidence at summary judgment for a "reasonable juror" to "conclude a standard of care was breached or that injury to [Colleen's] leg was a product of [Western Horseback's] conduct."

¶14 On this record, we reverse because a reasonable juror could have concluded that Western Horseback breached the industry's standard of care and caused Colleen's injury. Proximate cause is ordinarily a question of fact for the jury. *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546 (1990). To defeat summary judgment, the Gruvers "need only present probable facts from which the causal relationship reasonably may be inferred," *id.*, and need not "negate entirely the possibility that the defendant's conduct was not a cause" of a plaintiff's injury, *Wisener v. State*, 123 Ariz. 148, 150 (1979). Negligence claims are properly dismissed "when [the] plaintiff's evidence does not establish a causal connection [and instead] leav[es] causation to the jury's speculation, or where reasonable persons could not differ on the inference derived from the evidence." *Robertson*, 163 Ariz. at 546.

¶15 First, the Gruvers offered the expert opinion of David Johnson at summary judgment. Johnson had taught thousands of children and adults to ride and care for horses over the past 50 years. He was prepared to testify that Western Horseback deviated from the industry standards when it allowed just one wrangler to lead and supervise nine riders. Johnson also concluded that Flint "totally failed to observe" or supervise the riders. On causation in particular, the expert was prepared to testify that Colleen would "probably" not have been injured if Western Horseback

---

[1] The Gruvers also argue the release was ineffective because it incorrectly identified the equine owner as Western Horseback's predecessor-in-interest. Given our holding and rationale, we need not address that argument.

met the standard of care: "The reason the horse kicked [Colleen] Gruver was because the horses were too close as they were passing," and "[t]he addition of a second wrangler would have resulted in a safer ride and probably would have prevented the accident." Of particular importance, Western Horseback never countered with a rebuttal expert witness.

**¶16** Second, Flint agreed it was important to monitor the horses in his deposition "to see if there's inherent risk that you may see someone overriding a horse, kicking on them, pulling back on them, [or] having any difficulties," and conceded he had no "understanding of what was going on" behind him when the accident occurred. He could not even recall the last time he turned around to check on the horses before Colleen's injury. Flint also agreed it was dangerous for large gaps to develop between horses and characterized Colleen's injury as not commonly associated with trail riding. Although Colleen might not prevail at trial, this record was sufficient to defeat summary judgment.[2]

**¶17** Having found "there exists not a hint of negligence," the superior court dismissed the Gruvers' gross negligence claim, finding "one does not even come close, in the record, to any possible finding of gross negligence or willful misconduct in this matter." This was error.

**¶18** Gross negligence requires the same four elements of negligence, and evidence of gross, willful or wanton conduct. *Dinsmoor v. City of Phoenix*, 249 Ariz. 192, 196, ¶ 15 (App. 2020). "Generally, whether gross negligence occurred is a question of fact for a jury to determine." *Noriega v. Town of Miami*, 243 Ariz. 320, 329, ¶ 37 (App. 2017). "[B]ut the evidence on the issue must be more than slight and may not border on conjecture." *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 595 (App. 1991).

**¶19** Here, the evidence of gross negligence was more than conjecture. Flint could not recall the last time he had looked back at the line before the accident and conceded he was unaware of developments behind him. And again, Johnson was prepared to testify that Flint "totally failed" to either observe or supervise the riders. This evidence created a triable question. We reverse the superior court's grant of summary judgment in favor of Western Horseback.

---

[2] Western Adventures misplaces its reliance on *Florez v. Sargeant*, 185 Ariz. 521, 526 (1996), because the Gruvers' equine expert offered more than speculation, ultimate facts or conclusions of law.

## III.    Loss of Consortium and Punitive Damages

**¶20**        And last, Western Horseback requests that we affirm the superior court's dismissal of the Gruvers' claims for loss of consortium and punitive damages.   We decline the invitation, however, because the superior court dismissed those claims as derivative of the negligence and gross negligence claims.  *See Martin v. Staheli*, 248 Ariz. 87, 92, ¶ 17 (App. 2019) ("Loss of consortium is a derivative claim, which means that the success of a loss-of-consortium claim is dependent on the success of another claim."); *Edmond v. Fairfield Sunrise Vill., Inc.*, 132 Ariz. 142, 144 (App. 1982) (noting that punitive damages are "derivative" and "may only be awarded if the plaintiff has recovered actual damages).  Western Horseback may move for summary judgment on remand.

## CONCLUSION

**¶21**        We reverse the superior court's entry of summary judgment for Western Horseback and remand this matter for further proceedings consistent with this decision.   As the prevailing party, we award the Gruvers their taxable costs on appeal, contingent on timely compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA