IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARK H. DUPRAY, et al., *Plaintiffs/Appellees,*

*v.*

JAI DINING SERVICES (PHOENIX), INC., *Defendant/Appellant.*

No. 1 CA-CV 17-0599
FILED 11-15-2018

Appeal from the Superior Court in Maricopa County
No. CV2014-007697
The Honorable Daniel G. Martin, Judge

**VACATED AND REMANDED**

COUNSEL

Knapp & Roberts, P.C., Scottsdale
By Craig A. Knapp, David S. Friedman
*Counsel for Plaintiffs/Appellees*

Schneider & Onofry, P.C., Phoenix
By Timothy O'Connor
*Co-Counsel for Defendant/Appellant*

Osborn Maledon, P.A., Phoenix
By Kimberly A. Demarchi
*Co-Counsel for Defendant/Appellant*

---

**OPINION**

---

Presiding Judge Randall M. Howe delivered the opinion of the Court, in which Judge Jon W. Thompson and Judge Diane M. Johnsen joined.

---

H O W E, Judge:

¶1        JAI Dining Services (Phoenix), Inc. ("JAI") appeals a jury verdict finding it liable for negligently overserving alcohol to a patron who later drove while intoxicated and caused a collision that seriously injured Mark Dupray. JAI claims that the trial court erred in denying its motion for judgment as a matter of law ("JMOL") because it did not breach its duty of care to Dupray, and even if it did overserve the patron, the patron's decisions to drive while intoxicated after safely leaving JAI's establishment were intervening and superseding causes that absolved JAI of liability for Dupray's injuries. JAI also claims that the trial court abused its discretion in rejecting a proposed jury instruction on intervening and superseding cause.

¶2        We vacate the jury's verdict. The trial court correctly denied the motion for JMOL because the jury was presented with sufficient evidence to support the verdict. But the court erred in failing to give JAI's proposed instruction on intervening and superseding cause. The instruction properly stated the law on the issue and the issue was critical to the jury's determination of liability.

**FACTS AND PROCEDURAL HISTORY**

¶3        Pedro Panameno, who had been living in his car, spent the morning of August 5, 2013, at his girlfriend's house, the house he considered his "home." At 2:30 p.m., Panameno drove his girlfriend's brother to see their mutual friend, who lived about thirty minutes away. They stayed at the friend's house until 4:00 p.m., when the friend drove them to the mall in his car. On the way, they went to a drive-through liquor store and purchased a fifth of bourbon and two 16-ounce alcoholic energy drinks. Panameno had not yet drunk any alcohol that day. By the time they reached the mall, however, Panameno had drunk both alcoholic energy drinks and about half of the bourbon; his friend had one "swig" of the bourbon.

¶4          After a short stay at the mall, the friend drove them to Jaguars, a gentlemen's club JAI operated. On the way, Panameno drank the rest of the bourbon. Arriving around 5:00 p.m., the men ordered three or four buckets of beers, each containing eight 12-ounce bottles. Panameno drank eleven or twelve bottles of beer over the next three hours. Panameno became intoxicated and, by his own admission at trial, was in his "own little world."

¶5          The group left the club around 8:00 p.m. By that time, according to Panameno, "[e]verybody was probably pretty much toasted at that moment[,]" and "[e]verybody had more than their share, especially me." Panameno's friend drove them back to his house, about eight to ten minutes away. Panameno and his girlfriend's brother stayed at the friend's house for fifteen to twenty minutes, and then Panameno drove the brother back to his girlfriend's house. When they arrived at the house twenty to twenty-five minutes later, Panameno's girlfriend began arguing with him for bringing her brother home later than she had expected. She told Panameno that he looked intoxicated and should not be driving and tried to take his car key from him. Panameno became angry and drove off "a little aggressive[ly]."

¶6          A short distance away, Dupray was stopped at a red light on his "Vespa-type scooter." Panameno, traveling about forty-five miles per hour, rear-ended Dupray, severely injuring him. A police officer responding to the collision found three 12-packs of beer in Panameno's car, with two bottles missing or broken. When the police interviewed Panameno at the hospital, they observed signs of intoxication, including slurred speech, bloodshot and watery eyes, and a strong odor of alcohol on his breath. An officer drew Panameno's blood a few hours after the collision, and an analysis showed that his blood alcohol concentration at the time of the collision was between 0.210 and 0.274.

¶7          Dupray and his wife sued (1) Panameno for negligence and negligence per se for causing the collision and (2) JAI for "common law dram shop negligence" and negligence per se for overserving Panameno to the point of intoxication. JAI moved for summary judgment, asserting that it had met the standard of care as a matter of law and that Panameno's decisions to drive were intervening and superseding causes that relieved JAI of all liability as a matter of law. The trial court denied JAI's motion, and the matter proceeded to trial.

¶8          After the jury heard the evidence, JAI moved for JMOL under Arizona Rule of Civil Procedure 50. JAI argued that the Duprays had not

presented sufficient evidence from which a jury could find that it breached its duty to the Duprays. JAI also claimed that Panameno's decisions to drive after returning to his friend's house and again after reaching his girlfriend's house were intervening and superseding causes destroying the chain of proximate causation. The court denied JAI's motion.

¶9        JAI then proposed a jury instruction that provided that the Duprays were required to show that JAI's acts or omissions produced their injuries "unbroken by any intervening and superseding cause[.]" The instruction also defined "intervening cause" and "superseding cause." The court rejected this instruction and stated it would give only a general causation instruction. The court did allow JAI's counsel to discuss intervening and superseding causes in closing argument, but also instructed the jury that "the lawyers' questions and arguments are not evidence." The jury found for the Duprays, awarding $3,503,494.58 in compensatory damages and allocating 60% of the fault to Panameno and 40% to JAI. The jury also awarded punitive damages of $400,000 against Panameno and $4,000,000 against JAI.

¶10        After the verdict, JAI renewed its motion for JMOL and in the alternative, moved for a new trial with an intervening and superseding cause jury instruction. JAI also argued that insufficient evidence supported the punitive damages award. The court denied JAI's motion, and JAI timely appealed.

## DISCUSSION

### 1. Judgment as a Matter of Law

¶11        JAI argues that the trial court erred in denying its JMOL motion because (a) it did not breach its duty of care to the Duprays and (b) Panameno's actions in driving away from his friend's house and then his girlfriend's house were intervening and superseding causes of the Duprays' injuries. We review the denial of the motion de novo but view the evidence in the light most favorable to the Duprays. *See Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 259–60 ¶ 20 (App. 2004). A court may grant JMOL only when "a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue that is necessary to the party's claim or defense. Ariz. R. Civ. P. 50(a). In considering a JMOL motion, the trial court "may not weigh the credibility of witnesses or resolve conflicts of evidence and reasonable inferences drawn therefrom[,]" *McBride v. Kieckhefer Assocs. Inc.*, 228 Ariz. 262, 265 ¶ 11 (App. 2011), but "must give 'full credence to the right of the jury to determine credibility,

4

weigh the evidence, and draw justifiable conclusions therefrom[,]'" *id.* (quoting *State v. Clifton*, 134 Ariz. 345, 348 (App. 1982)). Because JAI failed to show that the jury could not reasonably find that it breached its duty of care to the Duprays or proximately caused their injuries, the trial court correctly denied the motion.

### a. Breach of the Duty of Care

¶12        A liquor licensee "is under a duty, imposed both by common law principles and statute, to exercise affirmative, reasonable care in serving intoxicants to patrons who might later injure themselves or an innocent third party, whether on or off the premises." *Patterson v. Thunder Pass, Inc.*, 214 Ariz. 435, 438 ¶ 13 (App. 2007). Arizona's "dram shop" statute, A.R.S. § 4–311(A), provides that a licensee is liable for property damage or personal injuries if the licensee sold liquor to an obviously intoxicated person and that person's consumption of the liquor proximately caused the plaintiff's injury. "Obviously intoxicated" means "inebriated to such an extent that a person's physical faculties are substantially impaired and the impairment is shown by significantly uncoordinated physical action or significant physical dysfunction that would have been obvious to a reasonable person." A.R.S. § 4–311(D). A licensee also cannot serve liquor to an obviously intoxicated person or allow an obviously intoxicated person to remain on the premises longer than thirty minutes after the obvious intoxication becomes known or should become known. A.R.S. § 4–244(14). Nor can a licensee serve more than forty ounces of beer to one person at one time for that person's consumption. A.R.S. § 4–244(23).[1]

¶13        The Duprays presented evidence that JAI did not exercise reasonable care in serving intoxicants to Panameno. Panameno testified that in the hour before he arrived at the club, he had drunk two 16-ounce alcoholic energy drinks and all but one "swig" of a fifth of bourbon. Once at the club, he drank eleven or twelve 12-ounce bottles of beer—between 132 and 144 ounces of alcohol in total—over the next three hours. He said that he became intoxicated and was in his "own little world." A forensic toxicologist testified that, based on an analysis of the toxicology reports of Panameno's blood after the collision, Panameno's blood alcohol concentration reached 0.10—the point at which a person would become visibly intoxicated—while he was at the club. The Duprays' expert on the standard of care for liquor licensees testified that based on Panameno's toxicology reports and the other evidence about Panameno's activities the

---

[1]        This statute has since been amended to increase the limit to fifty ounces of beer.

night of the collision, Panameno was obviously intoxicated at the club, and club personnel did not comply with industry standards in serving alcohol to him. According to the expert, club personnel did not monitor Panameno's drinking to determine if he was or had become intoxicated, nor did they prevent him from causing injury to others in his intoxicated state. This evidence provided a legally sufficient basis for the jury to find that JAI breached its duty of care to the Duprays, which precluded the trial court from granting JMOL for JAI.

¶14        JAI presents two arguments to the contrary. First, it argues that the trial court should have granted JMOL because Panameno's testimony about how much alcohol he drank at the club was inconsistent with expert testimony that he could have reached the blood alcohol concentration he had at the time of the collision only by drinking *after* he had left the club. But a trial court ruling on a motion for JMOL cannot weigh witness credibility or resolve conflicts in evidence, *McBride*, 228 Ariz. at 265 ¶ 11; it can determine only whether sufficient evidence was presented for the jury to resolve the fact at issue. The jury had evidence that JAI overserved Panameno to the point of obvious intoxication, which was reason to deny the JMOL motion.

¶15        JAI argues second that it did not breach its duty because the evidence was undisputed that Panameno left the club safely. For this proposition, JAI relies on this Court's decision in *Patterson*. But *Patterson* does not support such a limited view of the scope of a tavern's duty. In that case, a tavern served alcohol to a patron who was obviously intoxicated. 214 Ariz. at 436 ¶ 3. When the patron attempted to leave the tavern, however, a tavern employee took the patron's car key from her and drove her home in a different car, gave the patron back her key, and returned to the tavern. *Id.* Within an hour after the tavern employee left and unbeknown to the tavern personnel, the patron made her way back to the tavern parking lot, retrieved her car, drove off, and subsequently caused a collision. *Id.* This Court affirmed summary judgment for the tavern because the tavern's employees "fulfilled their legal duty of affirmative, reasonable care to [the patron] and the public by separating [the patron] from her vehicle and arranging for, as well as subsequently providing, the safe transportation of [the patron] to her residence." *Id.* at 439 ¶ 16.

¶16        Here, by contrast, the evidence does not show that the club's personnel took any action to see that Panameno reached home safely. No evidence shows that the club's personnel were even aware of Panameno's presence at the club. The fact that Panameno was transported away from the club by a friend does not by itself absolve JAI from liability for failing

to "exercise affirmative, reasonable care" in serving alcohol to Panameno. Thus, the trial court did not err by denying JAI's motion for JMOL on this issue.

### b. Proximate Cause

**¶17** A plaintiff suing for negligence must prove, *inter alia*, a "causal connection" between the defendant's breach and the plaintiff's resulting injuries. *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 564 ¶ 7 (2018). In this context, "cause" has two components: actual cause or "causation-in-fact," and proximate or legal cause. *Ontiveros v. Borak*, 136 Ariz. 500, 505–06 (1983); *Patterson*, 214 Ariz. at 438–39 ¶¶ 13–14; *Barrett v. Harris*, 207 Ariz. 374, 378 ¶ 11 (App. 2004). Actual cause exists if the defendant's act "helped cause the final result" and the result "would not have happened without the defendant's act." *Ontiveros*, 136 Ariz. at 505. A defendant is liable even if his conduct contributed "only a little" to the plaintiff's injuries. *Id.* (citation omitted). An act that is the actual cause of injuries will also be the proximate cause unless an intervening event supersedes the defendant's liability for the injuries. *Id.* at 505–06; *Patterson*, 214 Ariz. at 438–39 ¶ 14. An event that contributes to the injuries is intervening if it has an independent origin for which the defendant is not responsible. *Patterson*, 214 Ariz. at 438–39 ¶ 14. Such an event is superseding if it "was unforeseeable by a reasonable person in the position of the original actor" and "looking backward, after the event, the intervening act appears extraordinary." *Ontiveros*, 136 Ariz. at 506. When the injuries are "produced by an intervening and superseding cause, even though the original negligence may have been a substantial factor in bringing about the injury," the defendant is not liable "because the necessary proximate causation is lacking." *Patterson*, 213 Ariz. at 439 ¶ 14 (quoting *Herzberg v. White*, 49 Ariz. 313, 321 (1937)).

**¶18** The existence of proximate cause "requires consideration of all the facts," and "is usually a question for the jury, unless reasonable people could not differ." *McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, 256 ¶ 38 (App. 2013). This includes the question whether an intervening and superseding cause exists. *See Robertson v. Sixpence Inns of Amer., Inc.*, 163 Ariz. 539, 547 (1990) (holding that the trial court erred in granting summary judgment on issue of intervening and superseding cause).

**¶19** The trial court here properly denied JAI's motion for JMOL because the jury had sufficient evidence to find that JAI's conduct was the actual and proximate cause of the Duprays' injuries. The jury heard evidence that Panameno became intoxicated at the club and, traveling

forty-five miles per hour in an intoxicated state, rear-ended Dupray, severely injuring him. Of course, the jury also heard contrary evidence. JAI's expert testified that Panameno's blood alcohol concentration at and after the collision was inconsistent with the allegation that he left the club intoxicated. The jury heard testimony that Panameno was not driving when he arrived or left the club and that he voluntarily drove from his friend's house to his girlfriend's house and then away from his girlfriend's house until he finally collided with Dupray. But the existence of conflicting evidence precludes granting a JMOL. *See McBride*, 228 Ariz. at 265 ¶ 11.

¶20 JAI nevertheless argues that it was entitled to JMOL because Panameno's decision to drive after he had been driven away from the club constituted an intervening and superseding cause of the Duprays' injuries. It again relies on *Patterson*. In addition to holding that the tavern had fulfilled its duty to its patron and the public by separating the patron from her car and taking her home, this Court also held that the patron's decision to leave home and return to retrieve her car while intoxicated was an intervening and superseding cause. *Patterson*, 214 Ariz. at 440 ¶ 19. This Court held that the patron's decision was "unforeseeable and extraordinary" and "negated any negligence on the part of the tavern or its employees." *Id.*

¶21 JAI's argument—that Panameno's decisions to drive once he was safely away from the club constituted intervening and superseding causes that broke the chain of causation between JAI's negligence and the Duprays' injuries—does have some force. But this case is not like *Patterson* in two respects. First, unlike the tavern patron in that case, Panameno, who lived in his car, did not go to his own home after leaving the club, but went to the homes of others. Whether the homes of his friend or his girlfriend were places of repose, which might make unforeseeable his decision to leave them and continue driving, were factual questions for the jury, not the trial court, to determine. Second, the record contains no evidence that club personnel knew how Panameno arrived or departed from the club, where he was heading after he left, or where he was staying. Thus, a jury could have reasonably concluded that Panameno's collision with Dupray was foreseeable from JAI's perspective. Because JAI was not entitled to JMOL on the issue of causation, the trial court did not err in denying JAI's motion for JMOL.

## 2. Requested Jury Instruction

¶22 JAI also argues that the trial court erred by refusing to give a jury instruction on intervening and superseding cause. This Court reviews a refusal to give a requested jury instruction for an abuse of discretion and will not reverse if the requesting party cannot show resulting prejudice. *Brethauer v. Gen. Motors Corp.*, 221 Ariz. 192, 198 ¶ 24 (App. 2009). We review jury instructions as a whole, *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty.*, 222 Ariz. 515, 533 ¶ 50 (App. 2009), and view the evidence in the light most favorable to the requesting party, *Anderson v. Nissei ASB Mach. Co., Ltd.*, 197 Ariz. 168, 178 ¶ 39 (App. 1999). "A trial court must give a requested [jury] instruction if (1) the evidence supports the instruction, (2) the instruction is proper under the law, and (3) the instruction pertains to an important issue, and the gist of the instruction is not given in any other instructions." *Brethauer*, 221 Ariz. at 198 ¶ 24 (quoting *DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 144 Ariz. 6, 10 (1985)).

¶23 Applying these factors, the trial court abused its discretion in denying the requested instruction. First, the parties presented evidence that would support a jury finding that JAI's overserving of Panameno was not the proximate cause of the Duprays' injuries because Panameno's conduct after leaving the club constituted an intervening and superseding cause. The evidence showed that after Panameno left the club with his friends, he drove from his friend's house to his girlfriend's house — the place he considered his "home" — and then away from his girlfriend's house, even though he was intoxicated and rejected his girlfriend's pleas that he was too intoxicated to drive. From this evidence, the jury could have concluded that although JAI's negligence in overserving Panameno was an actual cause of the collision, the chain of causation was broken by Panameno's two independent decisions to drive from both houses even though he was intoxicated and warned that he should not drive.

¶24 Second, the instruction properly stated the law. An act that causes injuries in a chain of events will be the "proximate cause" of the injuries unless an independent and superseding event breaks that chain. *Ontiveros*, 136 Ariz. at 505–06; *Patterson*, 214 Ariz. at 438–39 ¶ 14; Restatement (Second) of Torts § 440 (1965) (A superseding event precludes the imposition of liability for injuries.). An event that contributes to the injuries is intervening and superseding if it occurred after, and was independent of, the original negligent act and was, looking back, extraordinary and unforeseeable by a reasonable person in the position of the original actor. *Ontiveros*, 136 Ariz. at 506; *Patterson*, 214 Ariz. at 438–39 ¶ 14; *see* Restatement (Second) of Torts §§ 440 (defining superseding cause),

441 (defining intervening force), 442 (identifying considerations in determining whether intervening force is a superseding cause). JAI's proposed instruction correctly tracked the law:

> Plaintiffs must show there was a natural and continuous sequence of events stemming from [JAI]'s alleged act or omission, unbroken by any intervening and superseding cause, that produced the injury, in whole or in part, and without which the injury would not have occurred.

> An "intervening cause" is an independent cause that occurs between the original act or omission and the final harm and is necessary in bringing about that harm.

> An intervening cause becomes a superseding cause, thereby relieving [JAI] of liability for any original negligent conduct, when the intervening force was unforeseeable and may be described, with the benefit of hindsight, as extraordinary.[2]

¶25          Third, the instruction pertained to a critical issue in the case: whether Panameno's actions were intervening and superseding causes of the Duprays' injuries. If the jury decided that Panameno's two decisions to drive while intoxicated after leaving the club constituted intervening and superseding causes, JAI would not be liable for the Duprays' injuries and not subject to punitive damages. The trial court's general causation instruction did not address this issue:

> Negligence causes an injury if it helps produce the injury and if the injury would not have happened without the negligence. There may be more than one cause of an injury.

> . . .

> Before you can find [JAI] at fault, you must find that [JAI]'s negligence was a cause of Plaintiffs' injuries.

---

2       We infer "force" in the third paragraph of the proposed instruction to mean "cause." We also recognize that the instruction fails to note that foreseeability of the intervening cause is assessed from the defendant's standpoint. *Ontiveros*, 136 Ariz. at 506; *Patterson*, 214 Ariz. at 439 ¶ 14. But because the issue of foreseeability in this case does not turn on this point, this omission is immaterial.

Without an instruction defining "intervening cause" and "superseding cause," the jury had no legal standard to apply to determine whether Panameno's acts were intervening and superseding causes. Although the trial court allowed JAI's counsel to argue that Panameno's acts were intervening and superseding causes, closing argument is a poor substitute for an instruction by the court, even if the trial court had not also instructed the jury that counsel's arguments were not evidence. The failure to provide the instruction to address the concept of intervening and superseding cause hampered JAI in arguing that it was not liable for the Duprays' injuries and hampered the jury in properly determining whether JAI was liable.

¶26        The Duprays argue that the general instruction was adequate and that an instruction on intervening and superseding cause was unnecessary. They rely on *Ritchie v. Krasner*, in which this Court held that a general instruction on causation without any specific instruction on intervening superseding cause was adequate in a medical malpractice case. 221 Ariz. 288, 299–300 ¶ 32 (App. 2009). That decision, however, held only that an intervening and superseding cause instruction was unnecessary under the facts of that case, *id.*, and did not purport to hold that such an instruction would be unnecessary or improper in other cases. In this case, JAI proposed an instruction that accurately stated the law on proximate cause and intervening and superseding cause, and those concepts were critical to correctly resolving the case.

¶27        The Duprays also argue that JAI's proposed instruction did not matter because the jury found JAI substantially at fault and imposed significant punitive damages against it. But the jury's finding that JAI was substantially at fault was made without an instruction on intervening and superseding cause. Properly instructed, the jury may have absolved JAI from any liability because Panameno's decisions to drive while intoxicated after reaching his friend's house and then separately rebuffing his girlfriend's pleas to not drive were intervening superseding causes. And if the jury did find JAI not liable, JAI would not be subject to punitive damages. Thus, the Duprays' arguments fail. The trial court abused its discretion in denying JAI's proposed instruction on intervening and superseding cause.

## CONCLUSION

¶28        We vacate the jury's verdicts against JAI and remand the case to the trial court. Because we vacate the jury's verdict on this ground, we need not address JAI's claim that insufficient evidence supported the punitive damages award.



AMY M. WOOD • Clerk of the Court
FILED:   AA