IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO
_____

SAMUEL PAZ,
*Plaintiff/Appellant,*

*v.*

CITY OF TUCSON,
A MUNICIPAL CORPORATION,
*Defendant/Appellee.*

No. 2 CA-CV 2022-0067
Filed November 6, 2023

_____

Appeal from the Superior Court in Pima County
No. C20152622
The Honorable Michael Butler, Judge

**AFFIRMED IN PART;
REVERSED IN PART AND REMANDED**

_____

COUNSEL

Risner & Graham, Tucson
By Kenneth K. Graham
*Counsel for Plaintiff/Appellant*

Michael G. Rankin, Tucson City Attorney
By Michelle R. Saavedra, Principal Assistant City Attorney, Tucson
*Counsel for Defendant/Appellee*

**OPINION**

Judge Eckerstrom authored the opinion of the Court, in which Judge Kelly concurred and Presiding Judge Brearcliffe concurred in part and dissented in part.

E C K E R S T R O M, Judge:

**¶1**        Plaintiff Samuel Paz appeals from a jury verdict in favor of the defendant City of Tucson, following an incident in which Tucson Police Department officers assaulted and battered him during a 2014 welfare check.  Paz challenges a number of the trial court's rulings on jury instructions, evidentiary issues, and its denial of sanctions related to his prior, successful motion for a new trial.  For the reasons that follow, we reverse the court's denial of sanctions and remand on that issue.  We otherwise affirm.

## Factual and Procedural Background

**¶2**        "We view the facts in the light most favorable to upholding the judgment."  *Gann v. Morris*, 122 Ariz. 517, 518 (App. 1979).  One afternoon in June 2014, three Tucson Police Department officers were sent to check on Paz's welfare.  He appeared to be intoxicated, had relieved himself in public, was nude from the waist down, had been seen flailing his arms about, and was pacing in a downtown alleyway near a public park and a middle school.  The officers attempted to detain him without using physical force, but Paz pushed one of them and ran away yelling for help.  The officers pursued and took him to the ground.  Paz suffered burns from being held down on the hot asphalt while the officers detained him.

**¶3**        In June 2015, Paz sued the City.  In 2019, the matter proceeded to trial and the jury found in favor of the City.  However, the trial court granted Paz's motion for a new trial on the ground that the City had improperly introduced results of a drug test "in such a way to unduly prejudice" Paz, despite the court's limiting instruction.  We affirmed that ruling in 2020. *See Paz v. City of Tucson (Paz I)*, No. 2 CA-CV 2019-0209 (Ariz. App. Dec. 18, 2020) (mem. decision).

**¶4**        Before the second trial in 2021, the trial court bifurcated the issue of damages from liability and causation.  The City conceded that the

officers "used force to arrest or detain" Paz, "or to prevent his escape after arrest or detention," and that this use of force technically constituted assault or battery.

¶5　　　　After the four-day second trial, the jury found in favor of the City, determining that the officers' use of force had been justified. The trial court denied Paz's motions for a new trial and for judgment as a matter of law on the City's justification defense. This appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1), (5)(a); *see also* Ariz. R. Civ. App. P. 9(e).

## Discussion

### I. Jury Instructions

¶6　　　　Paz objects to the trial court's jury instructions regarding the City's justification defense on two separate grounds. First, he challenges the court's refusal to separately instruct the jury on whether each assault or battery was justified. Second, he contends the court erred in the phrasing of its justification instruction.

¶7　　　　We review de novo whether jury instructions accurately state the law. *See Stafford v. Burns*, 241 Ariz. 474, ¶ 10 (App. 2017). However, we review for abuse of discretion a court's refusal to give a jury instruction, viewing the evidence in the light most favorable to the party requesting the instruction. *Dupray v. JAI Dining Servs. (Phx.), Inc.*, 245 Ariz. 578, ¶ 22 (App. 2018). We review the jury instructions as a whole and will not reverse unless the requesting party can show prejudice resulting from the court's refusal to give the instruction. *Id.* The court must give a requested instruction if (1) the evidence supports the instruction, (2) the instruction is appropriate under the law, and (3) the instruction pertains to an important issue and is not adequately covered by another instruction. *Id.*

### A.　Independent Assault or Battery Instructions

¶8　　　　During the first trial, the City eventually conceded that the police officers committed one assault and four batteries. Before the second trial, the City conceded the actions constituted assault or battery, but it did not make the concession for five distinct actions by the officers. The parties' joint pretrial statement stipulated that the justification defense would be determined pursuant to A.R.S. § 13-409.

¶9　　　　Paz requested a jury instruction that identified five separate admitted assaults or batteries involving distinct police actions. However,

reasoning that the facts had been presented "as one four-minute incident from which a Jury is to determine whether force was justified or not" rather than a series of discrete events, the trial court denied Paz's request. Instead, the final jury instruction stated the City had conceded "its police officers used force to arrest or detain Samuel Paz, or to prevent his escape after arrest or detention" and that the jury was required to determine whether that use of force had been justified. The jury was further instructed that "[t]he use of force can be justified at its commencement, but if the force becomes unnecessary, it loses its legal justification at the point it becomes unnecessary."

¶10 Paz maintains that the trial court's refusal to provide his requested instructions prevented the jury from deciding whether each assault and battery was justified, requiring the jury to "determine whether they felt the conduct of the officers as a whole was justified." He contends this was error because a reasonable jury could have concluded at least one of the assaults or batteries was not justified.

¶11 Paz has shown no abuse of discretion in the trial court's refusal to instruct the jury that it was required to find each separate assault or battery to have been justified. Section 13-409, the justification statute the parties stipulated applies in this case, states that:

> A person is justified in threatening or using physical force against another if in making or assisting in making an arrest or detention or in preventing or assisting in preventing the escape after arrest or detention of that other person, such person uses or threatens to use physical force and all of the following exist:
>
> 1. A reasonable person would believe that such force is immediately necessary to effect the arrest or detention or prevent the escape.
>
> 2. Such person makes known the purpose of the arrest or detention or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested or detained.

> 3. A reasonable person would believe the arrest
> or detention to be lawful.

The court's justification instruction substantively mirrored this statutory language. The remainder of the instruction, which stated that the officers' use of force "loses its legal justification at the point it becomes unnecessary," also reflected the Revised Arizona Jury Instruction on law enforcement justification. *See* Rev. Ariz. Jury Instr. Stat. Crim. 4.09 (5th ed. 2019) (adding: "The use of physical force in law enforcement is justified only while the danger continues, and it ends when the danger ends. The force used may not be greater than reasonably necessary to defend against the danger."); *cf. Life Invs. Ins. Co. of Am. v. Horizon Res. Bethany, Ltd.*, 182 Ariz. 529, 532 (App. 1995) (jury instruction need not be model instruction so long as it does not mislead jury when read alongside all instructions). The instruction therefore correctly reflected the applicable law on justification. Paz has shown no error. *See Wendland v. AdobeAir, Inc.*, 223 Ariz. 199, ¶ 27 (App. 2009) ("A jury instruction must be both harmful to the complaining party and directly contrary to the rule of law to justify reversal.").

¶12        Read in its totality, *see Dupray*, 245 Ariz. 578, ¶ 22, the instruction encompassed Paz's theory that multiple batteries or assaults occurred, some of which might not have been justified. The jury instructions included language that was helpful to Paz; the jury was expressly told that justified force can lose its legal justification "at the point it becomes unnecessary." Thus, in essence, the jury was implicitly instructed that the officers' actions here might have become unjustified at any point during the encounter with Paz.

### B. Use of "To Arrest" in Justification Instruction

¶13        Paz also argues the trial court erred by including the term "to arrest" in the justification instruction because "there was no evidence that the officers were seeking to arrest" him. As recited above, the court's instruction included the phrase "arrest or detention" numerous times.

¶14        Paz argues that the use of the "arrest" language in the final instructions was misleading and confusing and the "testimony at trial established that the officers were taking Mr. Paz into custody in order to provide him with help." He contends that the inclusion of the phrase "arrest" enabled the City to "make the misleading argument" that Paz believed he was going to be arrested.

¶15 Even assuming, *arguendo*, that the inclusion of the term "arrest" was error, Paz cannot establish resulting prejudice. In each instance that term was used, the jury was also instructed that the officers' conduct could be assessed in the context of a "detention." Thus, to the extent the evidence best supports that the actions occurred in the context of a detention rather than an arrest, the jury received proper instruction as to the appropriate legal standard. Furthermore, the instruction provides no different standard for assessing whether justification was authorized depending on whether the officers and Paz respectively believed the event was an arrest or a detention. To the extent the City contended that Paz may have believed he faced arrest rather than mere detention, Paz has not explained why this argument was improper. Thus, Paz has not shown how any claimed error in the instruction affected the outcome of the case. *See Dupray*, 245 Ariz. 578, ¶ 22.

## II. City's Closing Argument

¶16 Paz contends the trial court erred by denying his motion for a new trial on the ground that the City's closing argument violated a court order—issued before the first trial in 2019—precluding mention of any prior psychiatric diagnoses and any evidence, questioning, or argument suggesting that Paz was experiencing an acute psychiatric episode at the time of the incident.[1] We review the denial of a motion for new trial for abuse of discretion. *Mill Alley Partners v. Wallace*, 236 Ariz. 420, ¶ 7 (App. 2014); *see also Soto v. Sacco*, 242 Ariz. 474, ¶ 8 (2017) (appellate court grants "significant latitude to trial courts in ruling on new trial motions"). To the extent Paz suggests he was entitled to a new trial merely because the City allegedly violated a court order, we disagree that any such hypothetical violation alone mandates a new trial. *See Walter v. Simmons*, 169 Ariz. 229, 241 (App. 1991) ("A new trial based on a claim of counsel misconduct is never granted as a disciplinary matter; rather, it should only be granted for a cause that materially affects the rights of the aggrieved party.").

¶17 During its closing argument, the City reminded the jury that Paz had "not presented any evidence or testimony . . . that [he] was actually experiencing a mental health issue," that he "had a case manager at the time," or that he had "communicated anything to the officers during this

---

[1] Neither party has offered any authority on whether evidence precluded through a motion *in limine* in an initial trial remains precluded in a second trial where, as here, the issues presented to the jury were not identical and the motion was not renewed during the second proceeding.

interaction that would have enabled them to go through" typical procedures for addressing a mental health crisis. The City further argued that the jury had "zero evidence that the officers had any information" to follow mental health crisis protocols or that Paz "was experiencing a mental health crisis."

¶18 As in his motion for a new trial, Paz contends these arguments were prejudicial because they "emphasized the absence of evidence" regarding his mental health status. As both trial courts reasoned, any such evidence was irrelevant to the sole issue before the jury in each trial: whether the officers were justified in their use of force based on the information they had at the time of the incident. *See* § 13-409(1) (justification exists if "reasonable person would believe that such force is immediately necessary to effect the arrest or detention"). Rather, as the first trial court reasoned, the pertinent issue was whether, under the "totality of circumstances faced by the police at and around the time of the event," the officers reasonably believed their physical force was necessary based on their training, observations at the scene, and prior knowledge.

¶19 Given the irrelevance and initial preclusion from the first trial of any prior mental health diagnosis or acute psychiatric episode at the time of the incident, it was improper for the City to emphasize Paz's failure to present evidence that he may have been enduring a mental health crisis at the time of the incident.[2] But that irrelevance also undermines Paz's argument that the improper argument was prejudicial. Regardless of whether Paz had been authorized to submit evidence of a preexisting psychiatric condition, such evidence would have been immaterial to the jury's determination of what the officers believed. *See* § 13-409(1). Therefore, the trial court did not abuse its significant latitude in determining that any suggestion that Paz had failed to present evidence of his mental health issues did not entitle him to a new trial. *See Mill Alley*, 236 Ariz. 420, ¶ 7; *see also Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456 (1982) (even on record that "could justify either a conclusion of prejudice or no

---

[2]As we explain below, what the officers knew about Paz's mental health condition at the moment of the detention became relevant during trial. But the City went beyond that and broadly emphasized the absence of evidence that Paz may have been objectively mentally ill at the time of the incident. This improperly suggested that Paz had no foundation for questions about whether the officers should have followed mental health protocols.

prejudice," appellate court will affirm trial court's discretionary determination on new trial motion).

¶20 In context, the City's closing argument emphasized the lack of evidence establishing the officers' knowledge of Paz's mental health condition at the time of the incident, rather than whether Paz had effectively presented evidence as to his actual mental health. Paz's expert provided a basis for the City's statement when, on cross-examination, he agreed the officers were not "provided any information about Mr. Paz's mental health or whether he had a mental illness by anybody at the scene." And, Paz's attorney also cross-examined the City's witnesses at length about whether Paz's behavior ought to have triggered protocols for encountering mentally ill individuals. Thus, through his own trial conduct, Paz challenged whether the officers knew or reasonably should have known that he was experiencing mental illness. On this record, the trial court did not abuse its significant latitude in determining that this portion of the closing argument, although it contained some improper elements, did not entitle Paz to a new trial. *See Soto*, 242 Ariz. 474, ¶ 8.

## III. Evidentiary Rulings

¶21 Paz argues three of the trial court's evidentiary rulings were erroneous. "A trial court has broad discretion in admitting or excluding evidence, and we will not disturb its decision absent a clear abuse of its discretion and resulting prejudice." *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, ¶ 19 (App. 2005). An abuse of discretion occurs when the ruling is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Quigley v. Tucson City Court*, 132 Ariz. 35, 37 (App. 1982). Paz has shown no abuse of discretion in any of the rulings he challenges, each of which we briefly address.

### A. Admissibility of Police Report

¶22 Paz argues the trial court erred by denying his request to admit portions of a police report written by an officer who responded to the scene after the incident. The report contained that officer's second-hand summary of the event based on what the responding officers told him. The report stated in part that Paz "appeared to have mental issues or to be under the influence of some substance." The court excluded the report, reasoning it contained "pure hearsay," was duplicative of other testimony already in evidence, and was based on "no personal knowledge."

¶23 Paz contends this ruling was erroneous because the report did not contain hearsay under Rule 801(d)(2), Ariz. R. Evid. He further

maintains the exclusion was prejudicial because he intended to use the report to impeach the truthfulness of Officer Clark, one of the responding officers, who claimed in a deposition that was read to the jury that he never considered mental illness as driving Paz's behavior.[3]

¶24        Regardless of whether the proffered report was exempt from the rule against hearsay under Rule 801(d), the trial court acted within its discretion in deeming it inadmissible on the ground that it was cumulative. *See* Ariz. R. Evid. 403 (court may exclude relevant but "needlessly cumulative evidence").  The jury heard ample testimony establishing that at least some of the officers considered both substance use and mental illness when approaching Paz.  For example, Officer Pelton, the only officer to testify at trial rather than having a deposition read to the jury, agreed that he thought Paz "was either on drugs or unstable," meaning "somebody with mental health problems."  Another officer stated, also in a deposition read into the record, that although he could not recall his specific thought process before encountering Paz, mental illness is "always a consideration" in responding to a call where an individual presents similarly to Paz.  That officer also stated repeatedly that he had believed Paz was "in an altered state" but that he did not know whether illness or drugs had caused the alteration.  Only Officer Clark—whom Paz sought to impeach with the excluded report—stated definitively during his deposition that he "never considered mental health" because he believed Paz's behavior was consistent with the use of narcotics.

¶25        Both parties also presented expert witnesses, each of whom discussed officer training and response to individuals suffering from mental health crises.  Both experts opined that a reasonable officer could have believed Paz's behavior indicated either substance impairment or a mental health problem.

¶26        In short, the evidence submitted at trial amply raised the same inference Paz sought to establish through the unadmitted report—that in contradiction of his deposition testimony, Clark actually considered, or should have considered, mental illness as causing Paz's behavior.  Because numerous witnesses indicated they had considered mental illness in addition to substance use, any further impeachment of Clark's testimony that mental illness was not indicated would have been cumulative.  The

---

[3] Officer Clark's testimony was introduced in the form of a deposition, portions of which were read into the record because he was unavailable to testify at trial.

trial court therefore acted within its discretion in excluding the report on that ground. *See* Ariz. R. Evid. 403; *see also State ex rel. La Sota v. Ariz. Licensed Beverage Ass'n, Inc.*, 128 Ariz. 515, 523 (1981) ("exclusion of repetitious or cumulative evidence does not require reversal").

### B. Paz's Testimony

¶27        Paz next contends the trial court erroneously admitted portions of his own 2016 deposition testimony, which he argues were irrelevant and unfairly prejudicial. But he provides no relevant case law and scant argument to support this argument. His only record citation directs us to the minute entry for the day the deposition portions were shown to the jury; it does not cite to any other specific portions of the record.[4] *See* Ariz. R. Civ. App. P. 13(a)(7)(A) (opening brief on appeal must include argument containing "supporting reasons for each contention" and "appropriate references to the portions of the record on which the appellant relies"). Paz's statement, "See arguments set forth in Sec. C," is insufficient to allow us to adequately review this issue. Although he explains in his reply brief how the argument in Section C of the opening brief relates to this argument, the opening brief does not contain any such explanation. *See* Ariz. R. Civ. App. P. 13(c) (reply briefs "must be strictly confined to rebuttal of points made in" answering brief). Further, neither section contains any reference to authority other than that setting forth our review standards. *See* Ariz. R. Civ. App. P. 13(a)(7)(A), (B) (opening brief arguments must contain citations to legal authorities supporting each of appellant's contentions, in addition to those supporting relevant review standards); *see also Coggins v. Wright*, 22 Ariz. App. 217, 219 (1974) (refusing to consider legal issues unsupported by relevant authority in appellant's briefs). Under these circumstances, we deem this issue waived and will not address it further. *See Ritchie v. Krasner*, 221 Ariz. 288, ¶ 62 (App. 2009) (failure to cite relevant authorities, statutes, and portions of record as required by Rule 13(a) "can constitute abandonment and waiver" of claim).

### C. City's Expert Testimony

¶28        Paz argues the trial court made two prejudicially erroneous rulings regarding the testimony of the City's expert, Laurel Burgett. Both relate to Paz's efforts to impeach Officer Clark. We review rulings

---

[4] Although Paz later filed a transcript containing the attorneys' closing arguments, he fails to specify what portions of this nearly eighty-page transcript support his claim of error.

concerning the admissibility of expert testimony for abuse of discretion. *Felipe v. Theme Tech Corp.*, 235 Ariz. 520, ¶ 10 (App. 2014).

¶29　　Paz first challenges the trial court's admission of Burgett's testimony regarding her conversation with Officer Clark, which Paz objected to as inadmissible hearsay lacking a proper foundation for expert testimony. Before the second trial, Paz filed a motion *in limine* setting forth Burgett's testimony from the first trial and seeking to preclude similar testimony from the second trial. In particular, Paz objected to Burgett's statements that, during their meeting, Clark told her he had attempted to make small talk with Paz before escalating the response.

¶30　　The trial court denied, in relevant part, Paz's motion to preclude Burgett's testimony, as well as his subsequent motion for reconsideration of that ruling. Before Clark's deposition excerpts were read into the record at the second trial, Burgett testified as to what she had learned about the incident from each source. This included her testimony that while forming her report, she met with Officer Clark and reviewed his deposition. She stated that Clark's deposition testimony was not inconsistent with her later conversation with him. On cross-examination, however, Burgett agreed that some of the statements Clark made during the meeting were absent from or inconsistent with his deposition.

¶31　　On appeal, Paz maintains the court "erred by incorrectly applying" the law governing expert opinion testimony. In particular, he argues Burgett could not reasonably rely on Clark's statements to her during the meeting because those statements were not in evidence and they lacked indicia of reliability.

¶32　　Under Rule 703, Ariz. R. Evid., an expert "may base an opinion on facts or data . . . that the expert has been made aware of." So long as experts in that particular field "would reasonably rely on those kinds of facts or data," the facts or data "need not be admissible for the opinion to be admitted." *Id.* Consequently, statements that might otherwise constitute inadmissible hearsay may nonetheless be offered to show the basis for an expert's opinion if the expert reasonably relied on those statements to form an opinion. *See id.; see also State v. Tucker*, 215 Ariz. 298, ¶ 58 (2007) (otherwise inadmissible testimony disclosed under Rule 703 may be admitted only for "limited purpose of showing the basis of the expert's opinion"); *In re Estate of Olivas*, 132 Ariz. 61, 63-64 (App. 1982) (hearsay evidence admissible when used to form appraiser's reconstruction of property appraisal); *Simpson v. Heiderich*, 4 Ariz. App. 232, 237 (1966) ("When used to show the basis of his expert opinion, a doctor may testify

to the history given him by the patient as a non-hearsay use."). However, if those facts or data "would otherwise be inadmissible," they may be disclosed to the jury "only if their probative value . . . substantially outweighs their prejudicial effect." Ariz. R. Evid. 703; *see also* Fed. R. Evid. 703 cmt. to 2000 amends. (Rule 703 amended "to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted"); *State v. Guarino*, 238 Ariz. 437, ¶ 32 (2015) (looking to federal jurisprudence in conducting similar Rule 703 analysis).

¶33 The hearsay statement Paz challenges—that Clark told Burgett his initial communications with Paz were "small talk," or an effort to "communicate with and talk to him"—are not unduly prejudicial because they substantively mirror Clark's deposition testimony, in which he recounts attempting to engage Paz in what could reasonably be characterized as "small talk." Thus, although we note that admission of hearsay statements in this manner can present a delicate balancing act, here we find no abuse in the trial court's determination that their disclosure did not offend the limitations placed by Rule 703.

¶34 Paz further challenges the reliability of Clark's statements, as he was an eyewitness to the underlying event. *See Lynn v. Helitec Corp.*, 144 Ariz. 564, 568 (App. 1984) (source of expert's opinion lacks reliability if solely "based on statements of an eyewitness concerning the event giving rise to the lawsuit"). However, Burgett relied on those statements in the context of numerous data points beyond her personal meeting with Clark. Law enforcement experts may apply their training and experience to otherwise inadmissible data sources in order to reach an independent judgment. *Cf. Guarino*, 238 Ariz. 437, ¶¶ 30, 32-35 (addressing problem in criminal and Confrontation Clause context); *see also United States v. Vera*, 770 F.3d 1232, 1238-40 (9th Cir. 2014) (detective-expert's gang-related hearsay testimony admissible under federal counterpart to Rule 703 when used, in light of training and experience, to form independent opinion regarding narcotics trafficking). Furthermore, Burgett did not repeat verbatim Clark's statements when recounting his initial confrontation with Paz. *Cf. United States v. Holguin*, 51 F.4th 841, 856 (9th Cir. 2022) (under Fed. R. Evid. 703, law enforcement experts may rely on hearsay in reaching independent judgment without directly repeating hearsay statement). Thus, we conclude that Burgett's use of her interview with Officer Clark remained within the limitations set by Ariz. R. Evid. 703, and we find no error in its admission. *See Pipher v. Loo*, 221 Ariz. 399, ¶ 8 (App. 2009) (noting court's "wide discretion" for determining reliability of evidence under Rule 703).

¶35        Paz also maintains the trial court improperly refused to strike Burgett's testimony that Officer Clark was "very honest," which he objected to as vouching for a witness. This testimony arose during the City's redirect examination, in response to questions regarding possible inconsistencies between Clark's deposition testimony and Burgett's description of his account of the incident based on their meeting. Over Paz's repeated objection, the court allowed Burgett to testify, in response to the question whether "anything about [her] meeting with Officer Clark . . . would lead [her] to believe that what he told [Burgett] on that day was not true," that, "No, [she] thought [Clark] was very honest."

¶36        The City has implicitly conceded error on this issue by not contesting the impropriety of the trial court's overruling of Paz's objections. *See In re $26,980 U.S. Currency*, 199 Ariz. 291, ¶ 20 (App. 2000) (failure to respond to argument in answering brief may be construed as confession of error); *see also Bulova Watch Co. v. Super City Dep't Stores of Ariz., Inc.*, 4 Ariz. App. 553, 556 (1967) (principle that failure to file answering brief constitutes confession of error "equally applicable" when appellee fails to respond to specific issue in answering brief). Indeed, the City's heading on this issue states that "Burgett's testimony that Clark was 'very honest' was harmless error." Thus, we address only whether the error was unfairly prejudicial, such that it would require reversal. *See Larsen v. Decker*, 196 Ariz. 239, ¶ 6 (App. 2000).

¶37        In the civil context, "error is harmless unless it is inconsistent with substantial justice or affects the substantial rights of the parties." *Jaynes v. McConnell*, 238 Ariz. 211, ¶ 20 (App. 2015); *see also Creach v. Angulo*, 189 Ariz. 212, 214-15 (1997); Ariz. R. Civ. P. 61 ("Unless justice requires otherwise, an error in admitting or excluding evidence . . . is not grounds for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order."). "The improper admission of evidence is not reversible error if the jury would have reached the same verdict without the evidence." *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, ¶ 7 (App. 1998); *see also Am. Power Prods., Inc. v. CSK Auto, Inc.*, 239 Ariz. 151, ¶ 17 (2016) (moving party must demonstrate "objective likelihood," or reasonable probability, that extraneous material affected verdict); *Carter-Glogau Lab'ys, Inc. v. Constr., Prod. & Maint. Laborers' Local 383*, 153 Ariz. 351, 358 (App. 1986) (improper admission of evidence reversible only if, "absent the error, the jury would have reached a different verdict"). Reversible prejudice "will not be presumed but must affirmatively appear from the record." *Walters v. 1st Fed. Sav. & Loan Ass'n of Phx.*, 131 Ariz. 321, 326 (1982); *Zuluaga ex rel. Zuluaga v. Bashas', Inc.*, 242 Ariz. 205, ¶ 9 (App. 2017).

¶38      Paz argues the admission of Burgett's testimony merits reversal because, as the first officer to make direct contact with and use force against Paz, Clark's credibility "was crucial to this case." He maintains Clark's deposition testimony demonstrates that he failed to employ the appropriate engagement protocols, and that Burgett's testimony served to "soften" those statements "by saying that Clark approached Paz in a nonthreatening way" and by being non-assertive. He further urges that, in light of what he characterizes as conflicting deposition testimony by another officer present at the scene, we cannot conclude the jury would have found the officers' actions justified without the assistance of Burgett's vouching.

¶39      Although Burgett's vouching may well have bolstered Clark's overall credibility, after reviewing the record, the effect of that single improper comment did not, in all reasonable probability, affect the jury's verdict. *See Am. Power Prods.*, 239 Ariz. 151, ¶ 17. During the deposition of Clark, through the cross-examination of other witnesses including Burgett, through the presentation of his own evidence, and during summation, Paz directly challenged Clark's credibility and by implication the reliability of Burgett's assessment of that credibility. Thus, the jury received ample evidence to form its own independent conclusions on that point.

¶40      Furthermore, the City presented considerable evidence that Clark's testimony was essentially accurate. Paz highlights the few portions of Clark's testimony that support his theory that the officers' pre-contact communication was insufficient. But the jury heard multiple statements from Clark's deposition suggesting he had, indeed, attempted to converse with Paz in a non-threatening manner before physically engaging him.[5]

---

[5]He stated, among other things:

> It was not like we got out of the car and rushed him. Oh, no. Not at all. Not at all. I stood back. They stood back. And we just talked to him. . . . well, I did all the talking.

> Why are you here? Why do you got no pants on? Where is your pants? No response. Just nothing. . . . Probably three to five, seven minutes went past trying to get this guy to comply and listen.

Clark's deposition is thus overwhelmingly consistent with Burgett's description of the event. In particular, Clark emphasized that he "in no way made an aggressive act" toward Paz "in any way, shape, or form." Burgett's testimony comported with Clark's first-hand statements, rather than "softening" them.

¶41      Even setting aside Clark's testimony, the City presented deposition testimony from multiple witnesses who generally affirmed Clark's representation of the pre-force encounter. Officer Harwood's deposition testimony noted that Clark approached Paz in a "firm but polite" manner and generally acted in accordance with his training as the situation escalated.[6] Harwood further stated that Paz was "not under control." Officer Pelton testified similarly, stating specifically that Clark "was calm and trying to start a rapport with Mr. Paz," and that although the situation "evolved quickly," the officers had sufficient information to detain Paz at the outset of the encounter.

¶42      Because Paz did not present a substantial case that Clark was dishonest, because the jury had an independent basis to assess his honesty, and because the case turned on evidence presented by multiple witnesses other than Clark, Paz has not shown an objective likelihood that the jury would have reached a different verdict had Burgett not improperly vouched for Clark's honesty. *See Am. Power Prods.*, 239 Ariz. 151, ¶ 17; *see also Pub. Serv. Co. of Okla. v. Bleak*, 134 Ariz. 311, 321 (1982) (improper admission of hearsay testimony not prejudicial when "the facts thereby admitted are not controverted").

**IV. Sanctions Under A.R.S. § 12-349**

¶43      Finally, Paz argues the trial court erred in denying his motion for sanctions, which he requested pursuant to § 12-349(A)(3). He contends the City's mention of a drug screen during the first trial, in contravention of the court's directive not to introduce the screen to the jury before receiving its approval, constituted an unreasonable expansion or delay of the proceedings because it resulted in a new trial. "We review the court's

---

Clark then confirmed that although he decided to detain Paz "not long" after encountering him, his efforts to make verbal contact lasted about three to seven minutes.

     [6]To the extent Paz claims that Harwood "testified that he did not see any reason for Clark to go hands on when he did," we cannot find any statement in Harwood's deposition that supports Paz's characterization of that claim.

application of § 12-349 de novo, but we view the evidence in a manner most favorable to sustaining the decision, and we will affirm unless the court's findings are clearly erroneous."[7] *Ariz. Republican Party v. Richer*, 255 Ariz. 363, ¶ 32 (App. 2023). Even under a deferential standard of review, the record does not support the second trial court's finding that the City's actions were reasonable.

¶44        Section 12-349 requires a trial court to levy sanctions if it finds, as relevant here, that an attorney or party has "[u]nreasonably expand[ed] or delay[ed] the proceeding." § 12-349(A)(3). Although § 12-349 is most commonly applied to discourage groundless lawsuits and the resulting drain on judicial resources, *see Phx. Newspapers, Inc. v. Ariz. Dep't of Corr.*, 188 Ariz. 237, 243-44 (App. 1997), we have affirmed the award of sanctions under subsection (A)(3) under circumstances similar to those presented here, *see Solimeno v. Yonan*, 224 Ariz. 74, ¶¶ 31-32 (App. 2010) (affirming sanctions under § 12-349(A)(3) when failure to disclose expert witness resulted in mistrial and required new trial, wasting judicial resources).

¶45        Before testimony began, the first trial court deferred ruling on the admissibility of a drug screen test, warning the parties not to mention a drug screen unless and until they received permission to do so. Despite that warning, and without again raising the issue with the court, the City asked Paz if he knew that, when he was in the hospital after the incident, physicians performed a drug screening test on his urine. Paz immediately objected.

¶46        During the ensuing bench conference, the City argued it had asked the drug screen question because it believed that: (1) there had been no ruling as to the evidence's admissibility; (2) Paz had opened the door to being impeached with the drug screen by testifying that he had not taken any drugs the day of the incident; and (3) it was justified in introducing the screening because Paz had introduced the issue of his mental illness diagnosis in contravention of a joint stipulation and an evidentiary order.

---

[7]We note that in making its determination as to the reasonableness of the City's behavior during the first trial before a different judge, the second trial court was in much the same position as we are on appeal: its conclusion is based on a record rather than its primary observations.

¶47        After admonishing the City for improperly raising the issue,[8] the first trial court ultimately concluded that, although it had "serious reservations" about the reliability of the drug screening, it would permit the City to introduce evidence regarding the screening but would also permit Paz to introduce evidence regarding his mental illness. As the court reasoned, although the justification defense looks only to what the officers knew at the time of the incident, the jury's determination of whether the officers' actions were justified could nevertheless have been influenced by evidence that he was under the influence of drugs on the day of the incident and by evidence of Paz having a diagnosed mental illness. However, it provided the jury with a limiting instruction before deliberation, noting that it should consider only "information that the officers were aware of up to the time they took Samuel Paz into custody."

¶48        After the first trial concluded, the trial court granted Paz's motion for a new trial, concluding that "[t]he drug test was used in such a way to unduly prejudice the plaintiff, even with the Court's limiting instruction." In particular, the court reasoned that "the reliability and causal connection of the drug test as it relates to the primary issues in this case was not established by expert testimony." The court later specifically added that the City's mention of the drug screen, after the court had expressly ordered the parties not to raise the issue before seeking permission from the court, was "another basis for" its grant of a new trial. In affirming that ruling, we reasoned that under our deferential standard of review, substantial evidence supported the trial court's finding that the City had violated its order, causing Paz prejudice, regardless of whether that violation had been deliberate. *See Paz I*, No. 2 CA-CV 2019-0209, ¶¶ 12, 14-16.

¶49        After the conclusion of the second trial, Paz moved for partial attorney fees and costs under § 12-349(A)(3). After reviewing the first trial record, the second trial court noted that the first court never stated the City's actions resulted in "an unreasonable waste of time that would warrant sanctions" under § 12-349. It further found that § 12-349 applies only "when somebody knowingly and intentionally does something to extend" litigation and that such sanctions are intended "for bad conduct."

_____

[8]Specifically, the first trial court stated that it had "told [the City] not to bring [the drug screen] up unless [the City] got [the court's] permission" and that even if Paz had introduced other precluded evidence during his testimony, the court would "come down ten times harder with the attorney that violated [its] order."

It thus denied the motion, finding that there was not an unreasonable delay in the proceedings.

¶50 On this record, Paz has shown clear error in the second trial court's determination that the City did not act unreasonably when it asked Paz about the drug screen. *See Phx. Newspapers*, 188 Ariz. at 244 (we review factual findings for clear error and application of § 12-349 de novo). At the conclusion of the argument, the second court ruled that sanctions could not be imposed without a showing that the City intended to delay the proceedings when it violated the court's order. ("But there has to be some intent to delay. . . . I don't believe there was any attempt to delay or expand the proceedings."). We have specifically rejected this approach. In *Solimeno*, the appellant maintained that sanctions under § 12-349(A)(3) were inappropriate absent a showing he intended "to keep the lawsuit going." 224 Ariz. 74, ¶ 32. We rejected that argument and specifically held: "Under § 12-349(A)(3), the relevant question is whether a party's (or attorney's) actions caused unreasonable delay and expansion of the proceedings." Thus, the second court erred as a matter of law by importing a bad intent requirement into an (A)(3) analysis. *Compare* § 12-349(A)(3) (containing no such requirement) *with* § 12-349(A)(2) (identifying intent to delay or harass), (F) ("without substantial justification" under subsection (A)(1) means not only groundless, but also "not made in good faith"); *see also Phx. Newspapers*, 188 Ariz. at 244 (noting subjective intent relevant to analysis of sanctions under §§ 12-349(A)(1), (2)).

¶51 As the record of the first trial demonstrates, the second trial was caused by the violation of an unambiguous court order. Although the City ultimately listed a variety of reasons it felt entitled to ignore that order, it was for the court, not the City, to determine whether prior testimony had rendered the drug screening relevant. Such disregard of a trial court's order is not within the range of reasonable behavior. By ordering the City to refrain from presenting such evidence without prior permission from the court, the court was setting the parameters for reasonable courtroom conduct. The City necessarily behaved unreasonably by ignoring that order.

¶52 The second trial court also erroneously found that the order violated by the City was unclear. This finding is not supported by the record. The first trial court specifically found that it had twice expressly directed counsel to avoid introducing any evidence of the drug screening. That finding is supported by the transcript of its pretrial rulings. Furthermore, in affirming the trial court's grant of a new trial, we rejected

the City's argument that the order was unclear. *Paz I*, No. 2 CA-CV 2019-0209, ¶¶ 13-14.

¶53　　　Although the second trial court correctly observed that the first court never expressly found the City's conduct unreasonable, the first court was never asked to rule on a request for fees under § 12-349. It had no occasion to make such a determination. But the first court found a direct connection between the City's conduct and the need for a remedial new trial. In its order granting a new trial, the court noted that the improper introduction of the drug screen evidence was, alone, sufficiently prejudicial to merit a new trial. In later amending that order, it emphasized that the City's violation of its order presented an additional basis for a new trial. Together, these findings satisfied the requirement of § 12-349(A)(3) that a party's unreasonable conduct caused a delay in proceedings.

¶54　　　In so holding, we do not suggest that our trial courts must impose sanctions pursuant to § 12-349(A)(3) whenever a mistrial is caused by a party's improper question to a witness. But here, counsel disregarded the court's repeated and unambiguous order to seek permission before eliciting the drug-screen evidence. The admissibility of that evidence was a central and comprehensively litigated pretrial issue. We can conjure no theory under which such behavior can be characterized as reasonable. That action expanded the proceedings by requiring a new trial. *See Solimeno*, 224 Ariz. 74, ¶ 32.

¶55　　　The record thus lacks any substantial support for the second court's finding that the City's violation did not unreasonably delay the proceedings. *See Grant*, 133 Ariz. at 456 (appellate court may find abuse of discretion if "record fails to provide substantial evidence to support the trial court's finding"). Sanctions under § 12-349 are therefore required, and we reverse and remand this issue so that the trial court may calculate the appropriate fees and costs owed by the City.

## Disposition

¶56　　　For the foregoing reasons, we affirm in part. With respect to the issue of attorney fees and costs under § 12-349, we reverse and remand for proceedings consistent with this opinion.

B R E A R C L I F F E, Presiding Judge, concurring in part and dissenting in part:

¶57　　　I concur with the opinion but as to the imposition of sanctions under (A)(3), and then, only in part. I agree that the trial court applied the

incorrect legal standard by concluding that a sanctioned party must have harbored "some intent to delay" the proceedings. As set forth by the legislature, § 12-349(A)(3) only requires that a sanctioned party "[u]nreasonably expand[] or delay[] the proceeding"—however that is accomplished and with whatever intent he does so. *See Solimeno v. Yonan*, 224 Ariz. 74, ¶¶ 31-32 (App. 2010). Such unreasonable conduct could be motivated by nothing more than a desire to prevail with the jury, without any intent to expand or delay proceedings, and still be sanctionable. Although conduct with intent to delay can indeed amount to unreasonable conduct, unreasonable conduct is all that need be found.[9] Consequently, because the trial court incorrectly articulated the requirements of § 12-349(A)(3), we must conclude that it incorrectly applied the standard when it denied sanctions, and reverse.

¶**58**      Nonetheless, I would not, as the majority does, reverse *and* impose sanctions on appeal without remand. Rather, I would leave it to the trial court to determine in the first instance whether sanctions evaluated under the correct legal standard are appropriate. *See Hamm v. Y & M Enters., Inc.*, 157 Ariz. 336, 338 (App. 1988) ("When a request for fees is made under § 12–349, the trial judge reviews the course of the proceedings and the conduct of the parties from the commencement of the action to decide whether the proceedings have been unreasonably expanded or delayed."). Even though, arguably, we could examine the record of the first trial as readily as the "new" judge assigned to the second trial, we should leave the initial determination of sanctions for trial court misconduct to the trial judge. I therefore respectfully dissent in part.

---

[9] Similarly, "bad" conduct need not be found—although the difference between unreasonable conduct and bad conduct may be a hair's breadth.